James **HAYTHE**, Plaintiff-Appellant,

v.

**DECKER REALTY CO. et al.,**
**Defendants-Appellees.**

Nos. 71–1593, 71–1460.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1972.

Decided Oct. 26, 1972.

Ronald S. Samuels and F. Willis Caruso, Chicago, Ill., for Haythe.

Eva Schwartzman, Libertyville, Ill., Gerson I. Gluck, David A. Decker, Waukegan, Ill., for Bassett and Becker.

Before PELL and STEVENS, Circuit Judges, and JUERGENS, Senior District Judge.*

PELL, Circuit Judge.

Basing his complaint on 42 U.S.C. §§ 1982, 3604 and 3606, plaintiff James Haythe, a black man, sought damages and injunctive relief against defendants Lawrence Bassett, Richard L. Decker and Decker Realty Company for alleged violation of his civil rights. Bassett, a white man, had owned a residence in Waukegan, Illinois, which he sold to a white couple rather than a black couple, with an allegedly discriminatory motive in violation of the statutory sections on which the complaint was based. Decker, also a white man, and Decker Realty Company, through which he did business (collectively referred to herein as Deck-

---

* Senior District Judge William G. Juergens of the Eastern District of Illinois is sitting by designation.

er), were involved in the sale of the residence.

Although, initially, temporary injunctive relief was granted, this was later vacated after further factual development. On trial, in accordance with the district court's finding that there was no racially-motivated discrimination against Haythe, judgment was entered in favor of the defendants. This appeal followed.

■ It is clear to us that the district court gave careful and close consideration to the claims of Haythe. As pointed out by the court, the reach of 42 U.S.C. § 1982 is broad and prohibits all racially-motivated discrimination in the buying and selling of real estate. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). 42 U.S.C. § 3604 also interdicts racially-motivated real estate transactions.

■■ Our standard of appellate review is to determine under Rule 52(a), Fed.R.Civ.P., whether the findings of fact are clearly erroneous, and we have, pursuant to United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), carefully examined the entire record. In doing so, we have been mindful of the holding of this court in Smith v. Sol D. Adler Realty Co., 436 F.2d 344, 349–350 (7th Cir. 1971), that "race is an impermissible factor in [a real estate transaction] and that it cannot be brushed aside because it was neither the *sole* reason for discrimination nor the total factor of discrimination." (Emphasis in the original.) Further, we are not unaware that discrimination may be, and often is, artfully cloaked and concealed in sophisticated language so that its true nature does not become obvious.

■ From our examination of the record, bearing in mind the foregoing precepts, we are of the opinion that the district court's judgment is correct.

The thrust of Haythe's claim is that his offer was approximately $100.00 more for the residence property than the white couple's offer which eventually was accepted and that the amount offered was the current asking price. On these facts alone, it might seem that a prima facie case had been made out to show that the black man's money was not as good as that of the white man, an impermissible result. However, certain facts cannot thus be taken out of context as a basis for a final judicial determination. Haythe's offer, while satisfactory from a dollar point of view, failed in another important respect to be acceptable.

Bassett, a longtime employee at the United States Naval Facility, Great Lakes, Illinois, learning of his transfer to Philadelphia in the spring of 1970, placed his residence property on the market via a multiple listing sales agreement with Decker. He told the broker there were to be no restrictions of any kind in showing the house, and the house was shown without objection to several black prospects. Mrs. Bassett was a member of the "Committee on Open Occupancy for the Waukegan Area Conference on Religion and Races Housing Committee."

The first solid prospects were a young couple named Moreno. They refused to be interested in the original asking price which had been based on an appraisal to which was added certain selling expenses and some negotiating padding. An oral agreement between these parties was arrived at but was not reduced to writing when it was discovered that the stove and refrigerator were not included. All of this had occurred before Haythe first looked at the house.

By May 22, Bassett had discovered that his move was not to be put off and that he had to report to Philadelphia by June 29. Haythe through Decker submitted a written offer meeting the asking price. The offer, however, did not meet the listing specification, which limited the discount to be paid by the seller to a lending institution to 5%, as it specified 6%. Of greater importance to Bassett, however, and the district court so found, was that the offer was contingent upon Haythe's ability to se-

cure a mortgage commitment within 50 days. This presented to Bassett the prospect of leaving his family in Illinois while he assumed his new position or, in the alternative, taking them with him while leaving a vacant house behind him. In any event, he would not know until after his own departure for Philadelphia whether he had a definite deal. There was some conflicting evidence as to the ability of Haythe to secure a loan which apparently was to be 100% of the purchase price. The uncertainty apparently arose out of the fact that Haythe was "moonlighting" which might have reflected upon his ability to meet his obligations if the secondary employment was terminated. We do not, nor did the district court, find much significance in this factor as Haythe, a first class petty officer in the United States Navy, was apparently a responsible person and was so considered by a lending institution.

Because of the unacceptability of the 50-day provision, Bassett asked a Decker salesman to see if the Moreno offer could be reactivated. It was, and Bassett studied the two offers. He determined that it was to his financial interest to accept the Moreno offer which would permit closing prior to his departure even though it netted him approximately $100.00 less than the Haythe offer. Bassett did what we think most people would have done. He elected to take certainty. We find nothing in the record to cause us to think he would have done otherwise if Moreno had been a black person and Haythe a white.

Haythe, however, contends that Bassett did not know Moreno and therefore could not have been certain about his financial ability; ergo, the motivating factor was not certainty but was race. This approach ignores the salient fact that although Moreno's employment was not known to Bassett, he had correctly been informed that Mrs. Moreno was the daughter of the chairman of the board of the First National Bank of Waukegan and that there was no problem about the financing. It is no unusual assumption that the family connection connoted certainty of the transaction to Bassett.

While we have mentioned the slightly more favorable cash aspect of the Haythe offer, it must also be noted that Bassett, by obtaining his money earlier from Moreno, could recoup the difference to some extent by short term investment if he did not need the proceeds for a down payment at his new place of residence. If he did need the money, he certainly would have wanted it as soon as possible, thus making the Moreno offer more advantageous.

Haythe also claims that Bassett should have come back to him to see if he would make a more satisfactory offer. Bassett, however, did not attempt to get Moreno to make a better offer; he merely inquired as to whether the offer could be reactivated, and it was. We do not conceive in the absence of other persuasive evidence of discrimination [1] that the failure to conduct further negotiations with Haythe amounted to such discrimination. Time was running out on Bassett's efforts to sell his house.

Haythe complains that the district court rejected, as not being timely filed, his post-trial motion to make additional findings pursuant to Rule 52. Without deciding whether this motion was timely filed, we have examined the motion and find that the matters set forth were either adequately covered by the district court's memorandum opinion or were immaterial.

■ Bassett sought leave to file a post-judgment petition in the district

---

1. Haythe would find discriminatory intent in Decker's alleged statement to Haythe that Bassett was conservative, in Decker's reference to discrimination and in Decker's suggesting that Haythe see a lawyer. Decker's testimony was that he meant Bassett was financially, not racially, conservative, and that he had told Haythe he didn't want him to feel he was being discriminated against. The statement that he suggested Haythe get legal assistance was flatly denied. We do not find any of these "slender reeds" persuasive. The district court's credibility determination must be given due regard. Rule 52(a), Fed.R.Civ.P.

court for special damages, apparently related mostly to attorney's fees incurred in defending the present litigation. The motion was denied and Bassett filed a notice of appeal. Decker in this court has asked similar relief. Successful defendants may frequently think that the plaintiff should not have filed a suit nor persisted in appealing after an initial rebuff. We do not determine whether special costs and expenses should never be awarded. Here, we have no reason to think that Haythe pursued his litigation other than in good faith. The requested relief is denied.

For the reasons hereinbefore set out, we are of the opinion that the judgment below was correctly entered and we therefore affirm it.

Affirmed.