FAIR HOUSING COUNCIL OF BERGEN COUNTY, INC., et al., Plaintiffs,

v.

EASTERN BERGEN COUNTY MULTIPLE LISTING SERVICE, INC., et al., Defendants.

Civ. A. No. 76–418.

United States District Court, D. New Jersey.

Nov. 22, 1976.

Kevin M. Prongay, Jersey City, N. J., and Arthur J. Lesemann, Hackensack, N. J., for plaintiffs.

Smith & DeLucia by Myroslaw Smorodsky, Rutherford, N. J., for defendants Eastern Bergen County Multiple Listing Service, Inc., and Central Bergen County Multiple Listing Service, Inc.

Orbe and Nugent by Alfred S. Nugent, Jr., Ridgewood, N. J., for defendant Pascack Valley Multiple Listing Service, Inc.

Greenberg & Covitz by Morton R. Covitz, Englewood, N. J., for defendants Robert Pogol and Cross County of Bergen.

Leonard Adler, Englewood, N. J., for defendant Handleman Realty Co., Inc.

Victor K. Brown, Bengenfield, N. J., for defendant Carl Cimarosa, d/b/a Country Club Real Estate Organization, Inc.

Adams, Adubato, Tafro & Connelly by Maurice H. Connelly, South Orange, N. J., for defendant Joseph G. Spangenberger, Inc.

Barry I. Fredericks, Ridgewood, N. J., for defendant Northeast Bergen Multiple Listing Service, Inc.

## OPINION

STERN, District Judge.

Plaintiffs in this lawsuit challenge certain alleged practices in the Bergen County housing market. They charge that the defendants, who allegedly represent the entire real estate industry in Bergen, engage in racial discrimination in the sale and rental of housing in the County. Plaintiffs proceed under the asserted authority of a variety of federal laws, including the Civil Rights Act of 1866, Title 42 U.S.C. § 1982; the Civil Rights Act of 1870, Title 42 U.S.C. § 1981; the Civil Rights Act of 1968, Title 42 U.S.C. §§ 3601 et seq. (the Fair Housing Act of 1968); and the Sherman Act, Title 15 U.S.C. § 1. They invoke the jurisdiction of this Court under the corresponding jurisdictional statutes, Title 28 U.S.C. §§ 1331, 1337, 1343(4), 2201, 2202; Title 42 U.S.C. §§ 3612 and 3617, and Title 15 U.S.C. § 15. Plaintiffs request a declaratory judgment condemning defendants' alleged practices as illegal. They seek an injunction barring any continuation or repetition of such practices. Finally, they ask this Court to mandate a program of affirmative action to redress lingering effects of the asserted violations of law.[1]

The defendants moved to dismiss the original complaint on a variety of grounds, including failure to state a claim upon which relief may be granted, failure to resort to available state and federal administrative remedies, lack of standing, failure to join indispensable parties and lack of subject matter jurisdiction. After argument on the motions was heard, the Court granted plaintiffs leave to file an amended complaint. They did so, and defendants now renew their motions.

■ The amended complaint is voluminous. Its essential elements, however, may be briefly summarized. It is, of course, axiomatic that its well-pleaded allegations are to be accepted as true for purposes of ruling on the motions to dismiss. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 253 (1969).

The Fair Housing Council of Bergen County is a non-profit membership association dedicated to the promotion of equal opportunity in housing. Its goal is the elimination of racial discrimination in Bergen County. Over three thousand individuals and several social, civic and religious organizations belong to the Council.[2] The City of Englewood is a municipal corporation of the State of New Jersey, see N.J. S.A. 40:42–1 et seq. There are fourteen individual plaintiffs, eight of whom are black and six of whom are white. All but two of the individuals are residents of Bergen County.

The named defendants fall into two categories. Four of them are multiple listing services. They do business by rendering cooperative listing services to member real estate brokerage firms in connection with residential property in Bergen County. Five licensed real estate brokerage agencies form the second class of defendants. All five agencies are members of one or more of the defendant multiple listing services.

The amended complaint alleges that nearly all sales of residential property in Bergen County are effected through li-

1. Plaintiffs seek to represent (a) all persons, organizations, and municipalities residing or located in Bergen County; (b) all persons who have purchased or rented or sought to purchase or rent residential real property in Bergen County since March 8, 1972; and (c) all persons who may seek to purchase or rent residential real property in Bergen County, and who have been or continue to be, or would be, adversely affected by the acts, policies and practices of defendants complained of herein. (Complaint, ¶ 3) Plaintiffs also seek to sue defendants as a class (*Id.,* ¶ 8) These class action allegations are not now before the court.

2. The amended complaint does not specify how many of the individual members of the Council reside in Bergen County.

censed real estate brokerage agencies. Typically, a prospective seller "lists" the property with a broker, who undertakes to advertise and to show the house to prospective purchasers. The broker is generally compensated for his services by a commission paid by the seller. While brokers may act independently, the amended complaint asserts that approximately half of all Bergen County brokerage transactions involve the use of a multiple listing service.

The multiple listing services are associations of real estate brokers. When residential real property is placed for sale with a brokerage agency which is a member of a multiple listing service, the property may be "listed" by all members of the service, thereby increasing the exposure of the property. Members of the multiple listing services circulate daily bulletins and engage in cooperative advertising. When a sale is made through the services of a multiple listing service, the brokerage commission is apportioned between the broker who lists the property with the service and the broker who actually effects the sale.

The plaintiffs allege that all defendants discriminate on the basis of race among prospective customers. They charge that defendants engage in racial steering, directing white customers away from black or interracial neighborhoods and directing black customers away from white or interracial neighborhoods. This practice of steering is allegedly implemented through a variety of tactics, including selective listing and viewing of property, misleading statements made to prospective purchasers, limited and selective advertising, discriminatory treatment of black sales personnel, and discriminatory treatment of brokers dealing regularly with black clients.

Plaintiffs contend that the influence of the defendants on the housing market in Bergen County is so pervasive that their policy of racial steering has distinctively shaped the demographic patterns of the County and has resulted in racial segregation in housing. Each of the plaintiffs claims some quantum of personal injury from these practices. Defendants move to dismiss the amended complaint and to terminate the lawsuit.

■ The defendants' first contention is that the complaint fails to state a claim upon which relief may be granted. Such an assertion must be tested against a rigorous legal standard. The question is whether plaintiffs would be entitled to relief under any set of facts which could be proved in support of the claims advanced in the amended complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scott v. Plante,* 532 F.2d 939, 945 (3rd Cir. 1976); *Gray v. Creamer,* 465 F.2d 179, 182 (3rd Cir. 1972). Plaintiffs invoke the jurisdiction of this Court under a number of statutes. Since the core allegations of the complaint deal with racial discrimination in the sale and rental of housing, this Court turns first to the claims under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968.

■ The operative provision of Title VIII is Title 42 U.S.C. § 3604(a). In pertinent part that statute makes it unlawful

[T]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise makes unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.

This prohibition is broadly drafted. It clearly reflects Congressional intent to extirpate the poisonous influence of racial, religious, and ethnic prejudice in the Nation's housing markets. The Courts have spoken with one voice in interpreting this mandate broadly. See *United States v. Youritan Construction Co.,* 370 F.Supp. 643 (N.D.Cal.1973), *aff'd in part, remanded in part on other grounds,* 509 F.2d 623 (9th Cir. 1975); *Williams v. Matthews Co.,* 499 F.2d 819 (8th Cir.), *cert. denied,* 419 U.S. 1021, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974).

The tactics of "racial steering" as described in paragraphs 37 to 40 of the amended complaint constitute, in the view of this Court, a clear violation of § 3604(a). The real estate broker and the multiple listing service are crucial intermediaries between buyers and sellers of residential real estate. The complaint fairly pleads that the influence of these intermediaries extends far

beyond any one meeting of the minds between an individual purchaser and an individual seller. The plaintiffs allege that these real estate intermediaries actively and passively mislead potential purchasers in an effort to preserve or extend segregated housing patterns. In such a situation the factor of racial prejudice which Congress sought to eliminate is not merely introduced into the housing market in a discrete incident. It is given an effect extending beyond any one transaction involving a single bigoted purchaser or seller. To insulate the intermediary from Title VIII liability is to retreat from the affirmative mandate of § 3604(a). The Court holds that this complaint adequately pleads that the right to be free from racial discrimination in hous-

ing conferred by § 3604(a) has been infringed by defendants. Accord: *Zuch v. Hussey,* 394 F.Supp. 1028 (E.D.Mich.1975); *United States v. Robbins,* 1974 P–H EOH Rep. ¶ 13,655 (S.D.Fla.1974). See also Note, "Racial Steering: The Real Estate Broker and Title VIII," 85 Yale L.J. 808, 818–821 (1976).

Having found a right secured by Title VIII, the next issue is one of remedy. Title VIII provides two methods of enforcement. Title 42 U.S.C. § 3610 provides that a person who claims to have been injured by discrimination in housing may file a complaint with the Secretary of the Department of Housing and Urban Development.[3] The Secretary must then investigate the complaint. She is obliged to refer the com-

---

**3.** The full text of that section is as follows: § 3610. Enforcement—Person aggrieved; complaint; copy; investigation; informal proceedings; violations of secrecy; penalties

(a) Any person who claims to have been injured by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur (hereinafter "person aggrieved") may file a complaint with the Secretary. Complaints shall be in writing and shall contain such information and be in such form as the Secretary requires. Upon receipt of such a complaint the Secretary shall furnish a copy of the same to the person or persons who allegedly committed or are about to commit the alleged discriminatory housing practice. Within thirty days after receiving a complaint, or within thirty days after the expiration of any period of reference under subsection (c) of this section, the Secretary shall investigate the complaint and give notice in writing to the person aggrieved whether he intends to resolve it. If the Secretary decides to resolve the complaint, he shall proceed to try to eliminate or correct the alleged discriminatory housing practice by informal methods of conference, conciliation, and persuasion. Nothing said or done in the course of such informal endeavors may be made public or used as evidence in a subsequent proceeding under this subchapter without the written consent of the persons concerned. Any employee of the Secretary who shall make public any information in violation of this provision shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than one year.

Complaint; limitations; answer; amendments; verification

(b) A complaint under subsection (a) of this section shall be filed within one hundred and eighty days after the alleged discriminatory housing practice occurred. Complaints shall be in writing and shall state the facts upon which the allegations of a discriminatory housing practice are based. Complaints may be reasonably and fairly amended at any time. A respondent may file an answer to the complaint against him and with the leave of the Secretary, which shall be granted whenever it would be reasonable and fair to do so, may amend his answer at any time. Both complaints and answers shall be verified.

Notification of State or local agency of violation of State of local fair housing law; commencement of State or local law enforcement proceedings; certification of circumstances requisite for action by Secretary.

(c) Wherever a State or local fair housing law provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this subchapter, the Secretary shall notify the appropriate State or local agency of any complaint filed under this subchapter which appears to constitute a violation of such State or local fair housing law, and the Secretary shall take no further action with respect to such complaint if the appropriate State or local law enforcement official has, within thirty days from the date the alleged offense has been brought to his attention, commenced proceedings in the matter, or, having done so, carries forward such proceedings with reasonable promptness. In no event shall the Secretary take further action unless he certifies that in his judgment, under the circumstances of the particular case, the protection of the rights of the parties or the interests of justice require such action.

plaint to a state or local agency if such an agency can provide remedies substantially equivalent to those available under federal law. Even after such a referral has been made, if relief is not forthcoming the plaintiff may sue directly in federal district court.

Section 3612, on the other hand, provides that the rights granted in § 3604 may be enforced by civil actions in district court without regard to the amount in controversy.[4] It requires only that such actions be brought within one hundred and eighty days of the alleged violation of the Act.

Commencement of civil actions; State or local remedies available; jurisdiction and venue; findings; injunctions; appropriate affirmative orders

(d) If within thirty days after a complaint is filed with the Secretary or within thirty days after expiration of any period of reference under subsection (c) of this section, the Secretary has been unable to obtain voluntary compliance with this subchapter, the person aggrieved may, within thirty days thereafter, commence a civil action in any appropriate United States district court, against the respondent named in the complaint, to enforce the rights granted or protected by this subchapter, insofar as such rights relate to the subject of the complaint: *Provided,* That no such civil action may be brought in any United States district court if the person aggrieved has a judicial remedy under a State or local fair housing law which provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this subchapter. Such actions may be brought without regard to the amount in controversy in any United States district court for the district in which the discriminatory housing practice is alleged to have occurred or be about to occur or in which the respondent resides or transacts business. If the court finds that a discriminatory housing practice has occurred or is about to occur, the court may, subject to the provisions of section 3612 of this title, enjoin the respondent from engaging in such practice or order such affirmative action as may be appropriate.

Burden of proof

(e) In any proceeding brought pursuant to this section, the burden of proof shall be on the complainant.

Trial of action; termination of voluntary compliance efforts

(f) Whenever an action filed by an individual, in either Federal or State court, pursuant to this section or section 3612 of this title, shall come to trial the Secretary shall immediately terminate all efforts to obtain voluntary compliance.

4. § 3612. Enforcement by private persons— Civil action; Federal and State jurisdiction; complaint; limitations; continu-

ance pending conciliation efforts; prior bona fide transactions unaffected by court orders.

(a) The rights granted by sections 3603, 3604, 3605, and 3606 of this title may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction. A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred: *Provided, however,* That the court shall continue such civil case brought pursuant to this section or section 3610(d) of this title from time to time before bringing it to trial if the court believes that the conciliation efforts of the Secretary or a State or local agency are likely to result in satisfactory settlement of the discriminatory housing practice complained of in the complaint made to the Secretary or to the local or State agency and which practice forms the basis for the action in court: *And provided, however,* That any sale, encumbrance, or rental consummated prior to the issuance of any court order issued under the authority of this Act, and involving a bona fide purchaser, encumbrancer, or tenant without actual notice of the existence of the filing of a complaint or civil action under the provisions of this Act shall not be affected.

Appointing of counsel and commencement of civil actions in Federal or State courts without payment of fees, costs, or security

(b) Upon application by the plaintiff and in such circumstances as the court may deem just, a court of the United States in which a civil action under this section has been brought may appoint an attorney for the plaintiff and may authorize the commencement of a civil action upon proper showing without the payment of fees, costs, or security. A court of a State or subdivision thereof may do likewise to the extent not inconsistent with the law or procedures of the State or subdivision.

Injunctive relief and damages; limitation; court costs; attorney fees

(c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000

■ Defendants contend that this complaint does not satisfy the requirements of either § 3610 or § 3612. They first argue that § 3610 requires that plaintiffs exhaust their administrative remedies by filing a complaint with the Secretary of HUD. This Court agrees that the administrative complaint procedure contained in § 3610 is a jurisdictional prerequisite to the maintenance of a civil action in district court under that statutory section. *Johnson v. Decker,* 333 F.Supp. 88 (N.D.Cal.1971); *McLaurin v. Brusturis,* 320 F.Supp. 190 (E.D.Wis.1970); *Brown v. LoDuca,* 307 F.Supp. 102 (E.D.Wis.1969); *Colon v. Tompkins Square Neighbors, Inc.,* 289 F.Supp. 104 (S.D.N.Y.1968). There is no allegation in the amended complaint that would indicate such exhaustion of administrative remedies, and plaintiffs do not contend that they have done so.

■ The language of § 3610, however, is permissive and not mandatory. The inclusion of both § 3610 and § 3612 in Title VIII is in itself the best evidence that Congress intended to provide alternate paths to relief. The Department of Justice strongly urges this proposition as *amicus curiae.* The clear weight of judicial authority is in support of such a construction of Title VIII. *Crim v. Glover,* 338 F.Supp. 823 (S.D.Ohio 1972); *Brown v. LoDuca, supra,* at 103–104; *Johnson v. Decker, supra,* at 89–90. To hold otherwise would be to read § 3612 out of the statute entirely.

Defendants, however, contend that this action is barred under § 3612 as well. Section 3612 requires that civil actions brought under its grant of authority be filed within one hundred and eighty days of the alleged violation. Congress obviously included such a provision to prevent the district courts from being used to exhume stale grievances. No such considerations apply to the case at bar. Plaintiffs have alleged what amounts to a continuing conspiratorial practice on the part of multiple, influential defendants. Taking the complaint as true,

as is required at this early juncture, plaintiffs' grievance is anything but stale. It is fresh and immediate. Plaintiffs seek no form of relief which would directly involve the rights of otherwise innocent purchasers of homes. Given the prospective nature of the relief being sought, neither the defendants nor any as-yet-unidentified third parties may justly claim to be prejudiced. Accordingly, I find the allegations of a continuing practice of racial steering on the part of the defendants satisfy the one hundred and eighty day requirements of § 3612. The action may be maintained.

■ Even conceding, *arguendo,* the correctness of this result, defendants next contend that the Court cannot grant all or part of the relief requested by the plaintiffs. For this reason they seek dismissal of the complaint. While the question of remedy appears to be premature, the argument may be met and disposed of on its merits. Section 3612 empowers the district courts to

. . . grant as relief, as [they deem] appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

This Court has thus been given a broad mandate by Congress to frame appropriate relief should plaintiffs prevail. Cf. *Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976).

Defendants next contend that the amended complaint should be dismissed out of deference to the New Jersey Real Estate Commission and the New Jersey Division on Civil Rights. They argue that either or both of these State agencies can afford remedies substantially identical to those sought here. No claim that any proceeding is presently pending in either of those agen-

---

punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said

plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

cies is advanced. On the contrary, defendants assert that the plaintiffs are obliged to *commence* proceedings in those agencies in the first instance before being permitted to be heard here.

 This argument must be rejected. The federal courts are charged with the duty of honoring a litigant's choice of a federal forum in which to vindicate federally secured rights. *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Lewis v. Kugler,* 446 F.2d 1343 (3rd Cir. 1971). The availability of state remedies is irrelevant to this determination where, as here, nothing whatsoever pends in a state court or state agency. Compare, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). See *Rite Aid v. Board of Pharmacy,* 421 F.Supp. 1161 (D.N.J.1976) (three-judge court) (Stern, J., dissenting). Nothing in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) is to the contrary. Defendants' contention that the doctrine of primary administrative jurisdiction as enunciated in *United States v. Western Pacific R. R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) should cause this Court to stay its hand in deference to as-yet-unfiled proceedings before a state agency borders on the frivolous when applied to a Title VIII complaint in district court under the mandate of § 3612.

 The conclusion that the amended complaint states a Title VIII claim upon which relief may be granted does not end the inquiry. The question whether plaintiffs, or any of them, have standing to maintain the action remains. Standing involves constitutional and Congressional limitations on the reach of federal judicial power. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). There is in this lawsuit no question that the issues are tendered in an adversary context, see *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Defendants contend, however, that plaintiffs have not alleged "'threatened or actual injury resulting

from the putatively illegal action'", *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

 Paragraph 49 of the complaint contains an allegation that two black couples, the Davids and the Scotts, were steered away from predominantly white areas of the county by members of the defendant class, and that they were thus denied the opportunity to purchase real property in predominantly white areas within Bergen County. Defendants, relying on *Warth v. Seldin, supra,* nevertheless argue that the Davids and the Scotts have not alleged injury in fact sufficient to give them standing.

In *Warth,* various organizations and individuals in the Rochester metropolitan area challenged an exclusionary zoning ordinance of the Town of Penfield. They claimed that it effectively excluded persons of low and moderate income from living in Penfield, in contravention of plaintiffs' First, Ninth and Fourteenth Amendment rights and in violation of Title 42 U.S.C. §§ 1981, 1982 and 1983. No cause of action under Title VIII was pleaded. The Supreme Court held that the individual plaintiffs lacked standing because they failed to allege facts showing a demonstrable causal connection between the zoning ordinance and their own inability to find suitable housing in Penfield:

> Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed.

*Id.* at 504, 95 S.Ct. at 2208. The Court indicated that prospective relief would not remove the harm, since plaintiffs' position would be improved, even if the ordinance were struck down, only if third parties were willing to build low and moderate cost housing in Penfield. The Court further went on to note that the *Warth* holding was rendered in the absence of a Title VIII claim:

. . . Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judiciably cognizable injury in the absence of statute. *Linda R. S. v. Richard D.*, 410 U.S. [614] at 617, n. 3, 93 S.Ct. [1146] at 1148 [35 L.Ed.2d 536], citing *Trafficante v. Metropolitan Life Ins. Co., supra*, 409 U.S. [205] at 212, 93 S.Ct. [364] at 368 [34 L.Ed.2d 415] (White, J., concurring). No such statute is applicable here.

*Warth, supra*, at 514, 95 S.Ct. at 2213.

It is at once apparent that the instant case of the Davids and the Scotts is distinguishable from that of the plaintiffs in *Warth*. The injury of which they complain, racial steering, is direct and the causal nexus is clear. There is every likelihood that petitioners' inability to find the housing of their choice could be alleviated by an appropriate decree. And the rights they assert are predicated upon one of the very statutes to which the *Warth* Court made explicit reference. This Court holds that the Davids and the Scotts have indeed alleged sufficient injury in fact to have standing under Title VIII.

■ The next group of plaintiffs claiming standing are residents of non-integrated neighborhoods or communities, both white and black. The complaint avers that these persons have been deprived of the right to the "important social, professional, business and economic, political and aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices." The white plaintiffs claim to have been subjected to the stigma of living in white ghettos and to have suffered embarrassment and economic and psychological damage in social, business and professional activities from the opprobrium of being residents of such ghettos. Plaintiffs who live in predominantly black neighborhoods claim to have been deprived of the right to live in communities that are not limited, classified, or segregated on the basis of race and color.

*Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) is the starting point and focus of analysis. In *Trafficante* tenants in an apartment complex brought suit against their landlord for discriminating against non-white applicants. A black and white filed suit under Title 42 U.S.C. § 3610(a), claiming that the landlord's discrimination cost them the social benefits of living in an integrated community, deprived them of business and professional advantages that would have accrued from living with members of minority groups, and caused them to become residents of a white ghetto. In finding that the two tenants had standing to sue on their claims, the Court scrutinized the Congressional intent manifested in Title VIII:

> The dispute tendered by this complaint is presented in an adversary context. *Flast v. Cohen*, 392 U.S. 83, 101 [88 S.Ct. 1942, 1953, 20 L.Ed.2d 947]. Injury is alleged with particularity, so there is not present the abstract question raising problems under Art. III of the constitution. The person on the landlord's blacklist is not the only victim of discriminatory housing practices; it is, as Senator Javits said in supporting the bill, "the whole community," 114 Cong.Rec. 2706, and as Senator Mondale who drafted § 810(a) said, the reach of the proposed law was to replace the ghettos "by truly integrated and balanced living patterns." *Id.* at 3422.

*Trafficante*, at 211, 93 S.Ct. at 368. The language of the Fair Housing Act, said the Court, manifests "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." Accordingly, the injuries claimed by the *Trafficante* plaintiffs were sufficient to confer standing.

The plaintiffs here who reside in predominantly white or black neighborhoods allege precisely the same injury as the plaintiffs in *Trafficante*. Thus these plaintiffs have alleged the requisite injury unless an apartment complex housing eight thousand two hundred tenants is, from an Article III point of view, different from a county with

a population of over nine hundred thousand. The Court sees no reason to suppose that residents of neighborhoods, and of entire communities which are fashioned by discriminatory housing practices, are less "injured in fact" than the residents of a large apartment complex subject to similar discriminatory practices.

This issue was addressed in *TOPIC v. Circle Realty Co.*, 377 F.Supp. 111 (C.D.Cal. 1974), *rev'd on other grounds*, 532 F.2d 1273 (9th Cir. 1976). Plaintiffs in *TOPIC* were unincorporated volunteer organization and individual residents of the community embracing the cities of Torrance and Carson, and an unincorporated section of Los Angeles County between those two cities. They sought to enjoin defendant real estate firms from engaging in alleged discriminatory practices in violation of the Fair Housing Act. The area had a residential population of approximately one hundred thousand. While recognizing that the *Trafficante* decision extended standing to residents of a single housing project and that the Supreme Court's language "presupposes some outer limits to the rule enunciated," the district court found no just reason for setting the limits short of the facts then before the court. The court noted that residents of the Torrance-Carson community live in a closely settled area, and utilize the same stores, churches and recreational facilities. "If any of the 8,200 residents of an apartment complex can be injured by virtue of the loss of important benefits from interracial associations surely the residents of the Carson-Torrance community can and do suffer similar deprivations." *Id.* at 114. On appeal, the Ninth Circuit held that § 3612, unlike § 3610, does not create a cause of action for the "indirect" injuries alleged, and remanded to the district court for dismissal. *TOPIC v. Circle Realty*, 532 F.2d 1273 (9th Cir. 1976). The decision on appeal suggests also that, in a section of metropolitan Los Angeles, with a population of nearly one hundred thousand, the benefits of living in an integrated community may be so attenuated as to negate the existence of injury in fact. This Court respectfully disagrees with the Ninth Circuit's suggestion, and like the district court in *TOPIC*, declines to set the limits of the *Trafficante* rule short of the facts of the instant case. The alleged discriminatory housing practices and the effects of those practices would, if true, cause greater injury to the residents of Bergen County than the harm alluded to by the residents of the *Trafficante* housing complex. The fact that the alleged injury affects a large number of people in a large geographic area does not serve to attenuate it. On the contrary, it makes the harm more severe. Residents of an all white housing complex may need only to look to the next residential facility for the interracial associations they desire. If the allegations here are true, residents of Bergen County may have to go to an entirely different neighborhood or community. Similarly, a completely white building is less of a "ghetto" than a completely white neighborhood or community. That the *cordon sanitaire* has been drawn around an entire community rather than a single apartment complex does not render it lawful. This Court therefore holds that the residents of predominantly white neighborhoods have alleged injury in fact sufficient to confer standing to sue for violation of the Fair Housing Act, and respectfully declines to follow the contrary result suggested in *TOPIC* on appeal. The foregoing analysis applies equally with respect to residents of predominantly black neighborhoods or communities. These plaintiffs also have alleged the requisite injury in fact.

Defendants, relying on the decision of the Court of Appeals in *TOPIC*, next contend that § 3612 of the Fair Housing Act confers a cause of action on a class of persons much narrower than § 3610 and that plaintiffs do not fall within that class.

In *TOPIC* the Ninth Circuit read the Supreme Court's decision in *Trafficante* as limited to § 3610, and held that under § 3612, in order to have standing, the plaintiff must be a "direct victim" of the alleged wrongful practice. The court relied on dif-

ferences in the statutory language [5] between the two sections and a perceived "statutory design" giving only those persons "directly" injured immediate access to federal court while relegating those only indirectly injured first to the administrative processes.

This Court must again respectfully disagree with the analysis of the Ninth Circuit in *TOPIC*. In light of the procedural posture of *Trafficante* when that case reached the Supreme Court, it is simply impossible to tell with certainty whether the Court considered both statutory sections or only § 3610. *Trafficante* began as an action by two tenants under both § 3610 and § 3612, as well as Title 42 U.S.C. § 1982. A complaint in intervention was subsequently filed by four other residents of the apartment complex and an unincorporated association of its residents. The intervenors, who had not pursued § 3610's administrative remedies, alleged only two causes of action, one based upon § 3612 and one on § 1982. *Trafficante v. Metropolitan Life Insurance Co.*, 446 F.2d 1158, 1161 n. 5 (9th Cir. 1971). The Court of Appeals, affirming the district court's dismissal, held that none of the plaintiffs had standing to sue under any of the statutory sections invoked. The Supreme Court, of course, reversed.

The Supreme Court's opinion, which deals exclusively with the question of standing under the Fair Housing Act, cites and quotes both § 3610 and § 3612 without in any way distinguishing the two. In light of the fact that the intervenors' complaint alleged a cause of action under § 3612 and not under § 3610, we deem this fact significant. Moreover, the Supreme Court explicitly declined to reach the question of standing under Title 42 U.S.C. § 1982. *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209 n. 8, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). If the Supreme Court were deciding only the § 3610 question, this Court sees no reason why it did not expressly decline to consider § 3612. Nevertheless, in light of the Court's reliance on the words "person claiming to be aggrieved," which appear in § 3610, but not in § 3612, we are hesitant to read *Trafficante* as controlling on the question of standing to sue under § 3612.[6]

The Third Circuit has not directly confronted this issue. But this Court believes that this Circuit would construe standing under § 3612 more broadly than the Ninth Circuit has done. In *Shannon v. United States Dept. of Housing and Urban Dev.*, 436 F.2d 809 (3rd Cir. 1970), the Third Circuit Court of Appeals held that white and black residents, businessmen, and representatives of private civic organizations in the East Poplar Urban Renewal area of Philadelphia had standing to sue for an injunction against the Department of Housing and Urban Development's participation in a housing project which was about to be constructed. Plaintiffs alleged a number of substantive and procedural irregularities in the Department's approval of a change in the urban renewal plan to allow low income rental dwellings instead of the owner-occupied dwellings originally planned. The defendants argued that plaintiffs had no standing because they were neither displaced residents nor potential occupants of any proposed project and thus their interests were too remote. The Court stated:

> We do not agree. Certainly the dispute which they seek to have adjudicated will be presented in an adversary context. *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The test, for Article III purposes, is whether or not plaintiffs allege injury in fact. They do indeed. They allege that the concentration of lower income black residents in a

---

5. According to the complaint, Bergen County experienced dramatic population growth between 1960 and 1970. Its population in 1960 was 790,000. By 1970, it was 900,000, an increase of 15.3 percent (Complaint, ¶ 31).

6. Section 3610 permits suit by "any person who claims to have been injured by a discrimi-

natory housing practice or believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur . . . ." Section 3612 provides that "the rights granted by sections [3603–3606] may be enforced by civil actions" in federal or state courts. *See* nn. 3, 4 *supra*.

221(d)(3) rent supplement project in their neighborhood will adversely affect not only their investments in homes and businesses, but even the very quality of their daily lives.

*Id.,* at 818.

The language quoted above from the *Shannon* opinion deals with the question of standing under Article III. Further, the Fair Housing Act of 1968 was not directly in issue. Nevertheless, the fact that the Supreme Court explicitly quoted from *Shannon* in *Trafficante* in describing the role of "private attorneys general" in vindicating the Congressional policy reflected in the Fair Housing Act of 1968 of protecting not only those at whom discrimination is directed, but also those who are affected by such discrimination, lends support to the position that the Fair Housing Act would be given the broadest possible scope in this Circuit.

 Insofar as the Fair Housing Council seeks standing based on its special interest in eradicating discriminatory housing practices in Bergen County and its expenditure of monies towards that end, its complaint must fail. See *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The Fair Housing Council may, however, establish standing as the representative of those of its members who have been injured in fact. The determination required is whether or not the interest of the individual plaintiffs to be free from discriminatory housing practices is *sufficiently close* to the interests of the Fair Housing Council to give the latter standing. In this case, the interests of the organization and the individual plaintiffs are not only sufficiently close, they coincide. Both seek to be free from discriminatory practices by multiple listing services and real estate brokers. Therefore, the Fair Housing Council has standing to sue to assert the rights of the individual plaintiffs who in their own right, have standing to sue. *Park View Heights Corporation v. City of Black Jack,* 467 F.2d 1208 (8th Cir. 1972); *Heights Community Congress v. Rosenblatt Realty,* P–H EOH Rep. ¶ 13,702 (N.D.Ohio Mar. 11, 1975). Further, the Court holds that the City of Englewood has a similar identity of interests and thus has standing to sue under the Fair Housing Act, Title 42 U.S.C. § 3612. *Village of Park Forest v. Fairfax, Realty,* P–H EOH Rep. ¶ 13,699 (N.D.Ill. Jan. 28, 1975).

Consistent with the determination that the statute is to be construed broadly, it is the holding of this Court that all of the plaintiffs are within the zone of interests sought to be protected by § 3612 of the Fair Housing Act and all have standing to sue.

Paragraph 49 of the amended complaint asserts a cause of action under the 1866 Civil Rights Act, Title 42 U.S.C. § 1982, by the black plaintiffs who, because of their race, have been denied the right to purchase real property in predominantly white areas of Bergen County. Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

 This section is broad and prohibits all racially motivated discrimination in buying and selling of real estate. See *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Haythe v. Decker Realty Co.,* 468 F.2d 336 (7th Cir. 1972). This Court holds that the racial steering alleged to have been practiced on the black plaintiffs states a cause of action under this statute. As this Court's discussion of the standing question under the Fair Housing Act makes clear, these plaintiffs have met the tests set forth in *Warth v. Seldin, supra.* We need not reach the question of the other plaintiff's standing to sue under § 1982, because the complaint does not assert § 1982 violations with respect to parties other than the individual black plaintiffs.

 The Court further holds that paragraph 49 states a cause of action for violation of Title 42 U.S.C. § 1981. That section provides, in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .

The black plaintiffs have stated a cause of action under this section and have alleged the requisite injury to confer standing on them to vindicate these rights. *McLaurin v. Brusturis,* 320 F.Supp. 190 (D.Wis.1970). Again, the Court need not reach the standing of the plaintiffs who are not individual blacks because, the complaint, fairly read, does not allege violations of their § 1981 rights.

Defendants' contention that the complaint must be dismissed for failure to join indispensable parties actually subsumes several distinct, but related, claims. First, the multiple listing services seem to argue that they are not proper defendants because by their very nature they cannot discriminate.[7] They assert that they deal solely with property, not people. They submit that they do not deal directly with prospective purchases of homes; they do not hire brokers or salesmen; in short, they perform no activities which could promote patterns and practices of discrimination. They further contend that they have no control over member brokers in their dealings with prospective purchasers.

At this point in the litigation, it is sufficient to note that the question of the precise relationship between the multiple listing services and their individual member brokers is a matter of proof after discovery. The factual disputes spawned by conflicting allegations cannot be resolved now. Plaintiffs have alleged that the multiple listing services play an important role in the sale of real estate in Bergen County. While these defendants contend that their sole function is the dissemination of information, even that limited role, if in fact so limited, may facilitate discriminatory housing practices or enable participating brokers to share in the economic benefits of a sale predicated on such practices. See *Wheatley*

*Heights Neighborhood Coalition v. Jenna Resales Co.,* 76–C–409 (E.D.N.Y. May 3, 1976) (motion by multiple listing service for summary judgment denied). It cannot be said, at this time, that plaintiffs will be unable to develop facts leading to the imposition of liability upon the multiple listing services, and they therefore must be given the opportunity to do so.

Insofar as the defendants' argument rests on the contention that relief will be ineffectual because there are substantial numbers of independent brokers without any multiple listing service affiliation, this Court notes that it is unaware of any rule of law which requires a plaintiff to sue all persons who by independent act cause him injury. Defendants' contention that the New Jersey Real Estate Commission and the New Jersey Division on Civil Rights must be joined verges on the frivolous. Rule 19 of the Federal Rules of Civil Procedure provides that persons subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction shall be joined if, in their absence, complete relief cannot be accorded among those already parties. This rule is designed to avoid going forward with actions in which the court may end up rendering hollow relief; this is not the case here.

Defendants' final argument is that no cause of action under the antitrust laws has been stated. In order for the interstate commerce allegations of a Sherman Act complaint to be jurisdictionally sound, they must allege either (1) activities that are in the flow of interstate commerce, or (2) activities which, though occurring purely on a local level, substantially affect interstate commerce. *Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48 (3rd Cir. 1973). Plaintiffs herein rely on the latter theory. The complaint, at paragraph 50 reads:

The plaintiffs who are residents of or located in Bergen County and who own or have sought or who shall purchase real

---

**7.** Defendants claim also that the complaint does not allege any wrongful acts on their part.

It is sufficient to note that the complaint, fairly read, does allege such wrongful acts.

property therein, and all persons similarly situated, have been injured in their business or property, within the meaning of 15 U.S.C. § 15, because of the acts, practices and policies of the defendants alleged above, have unreasonably restrained the sale of residential real estate in Bergen County, New Jersey, in violation of 15 U.S.C. § 1. Such acts, practices and policies of the defendants have had a substantial effect on interstate commerce.

But nowhere in this lengthy complaint is there any *factual* allegation tending to show how interstate commerce is affected by defendants' act. Without such factual allegations, it is impossible to ascertain whether the affect on interstate commerce is "substantial." Plaintiffs' conclusory statement is wholly insufficient to satisfy the jurisdictional prerequisite of an action based upon the antitrust law. The claims under Title 15 U.S.C. § 1 must therefore be dismissed under F.R.Civ.P. 12(b)(1).

Plaintiffs are directed to present an order, with consent as to form thereon endorsed, within twenty (20) days.