Cynthia A. **POMEROY,**
Plaintiff-Appellant,

v.

**MERRITT PLAZA NURSING HOME, INC., Randall Deen and Jack Harmon, Individually and d/b/a Harmon Real Estate, Defendants-Appellees.**

No. 83–2441.

United States Court of Appeals,
Fifth Circuit.

May 20, 1985.

Daves, McCabe & Hahn, Ellen Hahn, Austin, Tex., for plaintiff-appellant.

Sharp, Ward, Price, Hightower & Searcy, Jason R. Searcy, Longview, Tex., for Merritt and Randall Deen.

Huffman & Palmer, Inc., William M. Huffman, Franklin Jones, Jr., Marshall, Tex., for Harmon.

Before GEE, POLITZ, and WILLIAMS, Circuit Judges.

PER CURIAM:

Cynthia Pomeroy brought this action alleging that the defendants had refused to lease an apartment to her because of racial discrimination. After a bench trial, the district court found that the defendants had not discriminated against Pomeroy and entered judgment in their favor. We affirm.

I.

In October 1981, the plaintiff-appellant Cynthia Pomeroy, a white female with a two-year-old daughter, applied for assistance from the City of Marshall Housing Authority (the "Housing Authority") in Marshall, Texas. The Housing Authority granted her a certificate of eligibility to participate in the Section 8 Existing Housing Program under 42 U.S.C. § 1437f. During the first week of November, Pomeroy found a suitable apartment and began leasing negotiations with Leta Harmon of Harmon Real Estate, one of the defendant-appellees in this case, and representatives of the Housing Authority. This apartment was owned by the Merritt Plaza Nursing Home and managed by Harmon Real Estate.

The parties reached an oral agreement that permitted Pomeroy to move into the apartment pending a required inspection of the apartment by the Housing Authority and the execution of a formal lease between Pomeroy, Harmon Real Estate, and the Housing Authority. The Housing Authority conducted its inspection the following week and sent Mrs. Harmon a list of required repairs. Several days later, Harmon Real Estate sent one Clyde Foster to the apartment to perform the repair work. The circumstances surrounding Foster's

visit, as well as the course of subsequent relevant events, were hotly disputed at trial.

The defendants-appellees contended that Foster visited the apartment on several occasions and completed the repairs. They also contended that soon after Pomeroy moved into the apartment neighbors began to complain that Pomeroy was playing her radio or stereo too loudly, and that Jack Harmon of Harmon Real Estate told Pomeroy of the complaints and requested that she not create a disturbance. Harmon testified that, although Pomeroy agreed several times not to disturb the peace, the neighbors continued to complain. Finally, the appellees contend that Clyde Foster, while driving his truck past the apartment, observed Pomeroy lying on a blanket in front of her apartment wearing only a see-through negligee. Foster stated that Pomeroy waved suggestively to him. Foster reported this incident to Harmon Real Estate, which decided not to enter into a lease agreement with Pomeroy. Jack Harmon directed Leta Harmon to send Pomeroy a letter requesting that Pomeroy vacate the apartment. Thereafter, Jack Harmon filed forcible detainer proceedings in the Justice Court of Harrison County and, after a hearing, the court ordered Pomeroy evicted from the apartment.

For her part, Pomeroy contended that Foster visited the apartment only one time. On this occasion, Pomeroy claims that she was sitting on her sofa with a black male friend drinking coffee and examining college catalogues. According to Pomeroy, Foster left soon after arriving and never returned to complete the repairs. Pomeroy denies that she received complaints from her neighbors or from Jack Harmon regarding the volume of her stereo or that she had ever been in front of her apartment wearing only a negligee.

After Pomeroy was evicted, she filed a complaint with the Department of Housing and Urban Development (HUD) alleging that she had been evicted because of racial prejudice. HUD sent an agent to investigate Pomeroy's claim. The agent, William Maddox, interviewed Jack Harmon and Judge Robert Wood, the Justice of the Peace who had presided at the eviction hearing, but was unable to resolve the parties' differences. After receiving a Notice of Right to Sue from HUD, Pomeroy filed this action in federal district court under the Fair Housing Act, 42 U.S.C. §§ 3601–3612, and 42 U.S.C. §§ 1981, 1982, and 1985(3). After a bench trial, the court resolved all factual issues against Pomeroy and held for the defendants.

On appeal, Pomeroy argues that the district court's findings of fact were clearly erroneous and cannot support its judgment in favor of the appellees. Pomeroy also argues that the district judge erred in denying her posttrial motion to disqualify himself pursuant to 28 U.S.C. §§ 144 and 455. The appellees dispute both contentions, suggesting as well that the federal courts lack jurisdiction to decide this case.

## II.

We first consider the appellees' contention that federal jurisdiction is wanting. The appellees contend that Pomeroy failed to comply with the procedural requirements for bringing an action under the Fair Housing Act as set forth in 42 U.S.C. § 3610.[1] Specifically, the appellees con-

---

1. 42 U.S.C. § 3610 provides in pertinent part:
   (a) Any person who claims to have been injured by a discriminatory housing practice ... (hereafter "person aggrieved") may file a complaint with the Secretary. Complaints shall be in writing and shall contain such information and be in such form as the Secretary requires. Upon receipt of such a complaint the Secretary shall furnish a copy of the same to the person or persons who allegedly committed ... the alleged discriminatory housing practice. Within thirty days after receiving a complaint, or within thirty days after the expiration of any period of reference under subsection (c), the Secretary shall investigate the complaint and give notice in writing to the person aggrieved whether he intends to resolve it. If the Secretary decides to resolve the complaint, he shall proceed to try to eliminate or correct the alleged discriminatory housing practice by informal methods of conference, conciliation, and persuasion....
   (b) A complaint under subsection (a) shall be filed within one hundred and eighty days af-

tend that Pomeroy had no right to bring an action against the Merritt Plaza Nursing Home and its administrator, Randall Deen, because Pomeroy's administrative complaint filed with HUD did not name the nursing home or Deen as defendants. Furthermore, the appellees contend that Pomeroy failed to file her action in district court within the 30-day period established by § 3610. Finally, the appellees contend that the civil rights statutes on which Pomeroy bases her claim do not provide a basis for federal jurisdiction because Pomeroy has not alleged that she suffered discrimination because of *her* race.

Some courts have held that a plaintiff's failure to comply with the procedural requirements of 42 U.S.C. § 3610 prevents the plaintiff from basing federal jurisdiction on a violation of the Fair Housing Act. *See, e.g., Green v. Ten Eyck*, 572 F.2d 1233, 1241–42 (8th Cir.1978); *Fair Housing Council of Bergen County, Inc. v. Eastern Bergen County Multiple Listing Service*, 422 F.Supp. 1071, 1078 (D.N.J.1976); *Sumlin v. Brown*, 420 F.Supp. 78, 80 (N.D. Fla.1976). *See also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n. 10, 99 S.Ct. 1601, 1610 n. 10, 60 L.Ed.2d 66, 79 (1979) (noting that lower federal courts are divided on this issue). Like the court in

*Hodge v. Seiler*, 558 F.2d 284, 285 (5th Cir.1977), however, we need not decide whether Pomeroy's failure to bring her action in federal court within 60 days of filing her HUD complaint deprives us of jurisdiction because the civil rights statutes that Pomeroy has cited, 42 U.S.C. §§ 1981, 1982, and 1985(3), provide us with an alternate basis of federal jurisdiction. Addressing the question of jurisdiction under § 1982, both the Supreme Court and this Court have held that white persons who are injured because of antiblack prejudice may obtain relief in federal court. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386, 392–93 (1969); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir.1982); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.1975). The district court therefore had jurisdiction to hear this case and we have jurisdiction over the appeal.

### III.

Turning to the merits of the case, we first consider whether the district judge erred in refusing to disqualify himself. During the course of the trial in district court, the district judge made several remarks that Pomeroy and her attorney believe indicated a prejudice against women.[2]

---

ter the alleged discriminatory housing practice occurred. Complaints shall be in writing and shall state the facts upon which the allegations of a discriminatory housing practice are based. Complaints may be reasonably and fairly amended at any time. A respondent may file an answer to the complaint against him and with the leave of the Secretary which shall be granted whenever it would be reasonable and fair to do so, may amend his answer at any time. Both complaints and answers shall be verified....

\* \* \* \* \* \*

(d) If within thirty days after a complaint is filed with the Secretary or within thirty days after expiration of any period of reference under subsection (c), the Secretary has been unable to obtain voluntary compliance with this title, the person aggrieved may, within thirty days thereafter, commence a civil action in any appropriate United States district court, against the respondent named in the complaint, to enforce the rights granted or protected by this title, insofar as such rights relate to the subject of the complaint.

**2.** Pomeroy points to two instances in which the district judge made comments that Pomeroy argues demonstrated his bias against women. The first occurred during the cross-examination of Clyde Foster by Pomeroy's attorney concerning the incident in which Pomeroy allegedly was in her front yard wearing only a negligee:

Q. Did you stop in front of the Pomeroy house?

A. No, ma'am.

Q. Just went on by?

A. Yes, ma'am.

Q. Okay. Now, what position was Ms. Pomeroy in?

A. Her legs was raised, that was the best I can remember.

Q. Her legs were raised?

A. Yes.

Q. Both of them?

A. Best of my knowledge, yes.

Q. Were they just sticking up in the air?

A. I wouldn't say straight up, no.

Q. How were they?

THE COURT: I think you're getting into a little bit too much detail now.

Pomeroy's attorney therefore filed a motion under 28 U.S.C. §§ 144 and 455 to disqualify the district judge. The judge denied the motion, ruling that the motion, filed after the trial had ended, was not timely. The judge also ruled that § 455 was inapplicable because he did not have a substantial interest in the outcome of the case.

■ The district judge's stated reasons for denying Pomeroy's motion are not a correct legal basis for his ruling. Section 144's language requires the moving party to file an affidavit "not less than ten days before the beginning of the term at which the proceeding is to be heard...." Since formal terms of court were long ago abolished, the literal ten-day requirement no longer applies. Instead, courts have simply required a party to exercise reasonable

diligence in filing an affidavit after discovering facts that show bias. *See, e.g., Smith v. Danyo*, 585 F.2d 83 (3d Cir.1978). Pomeroy filed her motion promptly after the judge made the offending remarks. Also, § 455(b)(1) requires a judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party ...," and not merely when the judge has an interest in the case.

■ Despite the district court's errors in explaining its ruling on the motion to disqualify, the court's decision to deny the motion was correct. Although her motion was timely filed under § 144, Pomeroy failed to submit such an affidavit in support of it as § 144 requires. Instead, the affidavit was executed by Pomeroy's attorney. A court may not grant relief under § 144 if a party's counsel instead of the

THE WITNESS: That has been two years, ma'am, and I am sorry I cannot remember exactly in detail.
THE COURT: You might ask him if they looked good or looked attractive?
BY MS. HAHN:
Q. Did they look attractive?
A. To me, no. I thought it was very indecent, if you are asking that question.
First Supplement Record on Appeal at 130–31.
The other incident occurred during the cross-examination of Judge Robert Wood by Pomeroy's attorney:
Q. Did you also tell Ms. Pomeroy or the East Texas Legal Services that she would also have to post a $2,000.00 bond?
A. I probably did.
Q. In order to appeal the eviction?
A. I probably did.
Q. What was that $2,000.00 bond for?
A. The Court has got a right to set the bond.
Q. Why so high?
A. It is in the prerogative of the Court to set any type bond they want.
Q. What was your reason for setting a $2,000.00 bond?
A. That has been a long time ago.
MR. JONES: Your Honor, I object to this line of questioning.
THE COURT: Well, the Court can answer the question if he wishes, but it is immaterial and irrelevant and he has the discretion to set the bond.
MR. JONES: His conduct is not in question here, either, Your Honor.
MS. HAHN: I believe his conduct is in issue.
THE COURT: I beg your pardon?
MS. HAHN: I believe his conduct is in question, Your Honor.

THE COURT: I cannot believe his conduct is in question. Do you think it is material?
MS. HAHN: Yes, Your Honor.
THE COURT: For what reason?
MS. HAHN: To show that she was evicted for racial reasons.
THE COURT: Well, how does that show that she's evicted for racial reasons?
MS. HAHN: I think it tends to show good faith or bad faith of the Court in this whole proceeding.
THE COURT: Well, the Court thinks you are very much out of line in assuming that the Court would use bad faith in the eviction. He could have nothing against this woman, and it would make no difference with him. He is performing a function now, now like this Court, and you may think that the Court is in bad faith now.
MS. HAHN: No, Your Honor.
THE COURT: But that is what the Court would say that that indicates her female frustrations to even assume that a Court would go to that extent. Now, if the Court wants to answer the question, and I am also talking about frustration on the part of the lawyer, why I don't know. But if the Court wants to answer the question as to why he set the bond at $2,000.00, rather than $200.00 or rather than $3,000.00 or $5,000.00, he may answer it. On the other hand, if he does not wish to answer it, the Court will not insist that he do so, because I don't think it is material. So that is up to the Judge, if you want to give your explanation as to why you set a $2,000.00 bond, and you may do so, and then if not, you can tell her that comes under your prerogative.
First Supplemental Record on Appeal at 138–40.

party executes an affidavit alleging personal bias or prejudice. *Roberts v. Bailar,* 625 F.2d 125, 128 (6th Cir.1980); *Paschall v. Mayone,* 454 F.Supp. 1289, 1299–1301 (S.D. N.Y.1978). Furthermore, the district judge's remarks, while doubtless ill-advised, were not so intemperate that a reasonable person would necessarily question his impartiality. *See Parliament Insurance Co. v. Hanson,* 676 F.2d 1069, 1075 (5th Cir.1982) (district judge not required under § 455 to recuse himself because of "anti-insurance company" bias shown by remarks at trial). The district judge's decision to deny Pomeroy's motion for recusal was therefore correct.

## IV.

■ Finally, Pomeroy urges that the district court's findings of fact are clearly erroneous. Specifically, she contends that the court erred in finding that the appellees were unaware that she was eligible for assistance from the Housing Authority when she presented documentary evidence to the contrary. This is significant, Pomeroy argues, because it shows that her eviction for nonpayment of rent was merely a pretext for unlawfully evicting her on racial grounds. Pomeroy also contends that apparent inconsistencies in Jack Harmon's explanation of why she was evicted [3] constitute further evidence that the eviction was racially motivated. Finally, Pomeroy points out that the district court failed to explain the reasons behind its credibility choices and that the court failed to consider evidence of the appellees' past discriminatory conduct.

Under rule 52(a), Fed.R.Civ.P., we may not disturb the findings of the trier of fact unless the findings are "clearly erroneous." The Supreme Court has recently reaffirmed the principle that appellate courts must defer to the fact findings of the district court when, as here, more than one permissible view of the evidence exists, and that "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings...." *Anderson v. City of Bessemer City,* —— U.S. ——, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). See also *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (findings of "ultimate fact" receive same deference).

Examining the record under the Rule 52(a) standard, we cannot accept Pomeroy's contention that the district court's findings of fact were clearly erroneous. The record reflects that each side presented several witnesses at trial and that these witnesses gave conflicting accounts of the relevant events. The court, as trier of fact, accepted the appellees' version of the case and found Pomeroy's witnesses lacking in credibility. The record contains no indication that the court abused its discretion in making its credibility choices and factual conclusions, nor does the record compel acceptance of Pomeroy's contention that the reasons Jack Harmon gave for evicting her (nonpayment of rent and disturbing the peace) were merely pretexts for evicting her on racial grounds. Without strong—well-nigh conclusive—indications in the record that the district court erred in reaching its factual findings, we are duty-bound to accept the trial court's resolution of the fact issues in this case. Whether we would have found otherwise on the conflicting evidence is of no consequence. The judgment of the district court must therefore be

AFFIRMED.

---

3. In the letter Harmon Real Estate sent to Pomeroy requesting that she vacate the apartment, Pomeroy was informed that the reason for this action was her disturbance of the peace. In an affidavit to the HUD investigator and apparently at the state court eviction hearing, however, Jack Harmon stated that Pomeroy was evicted for nonpayment of rent.