**TRAVELERS INSURANCE COMPANY**

v.

**ST. JUDE MEDICAL OFFICE BUILD-ING, LIMITED PARTNERSHIP and St. Jude Hospital Complex Development Group, Inc.**

Civ. A. Nos. 93–1199, 93–2414.

United States District Court,
E.D. Louisiana.

Jan. 25, 1994.

Brent B. Barriere, Robert Eitel, Phelps, Dunbar, New Orleans, LA, for plaintiff Travelers Ins. Co.

Victoria L. Bartels, William F. Wessel, Wessel, Bartels & Ciaccio, New Orleans, LA, for defendant St. Jude Medical Office Buildings Ltd. Partnership and St. Jude Hosp. Complex Development Group, Inc.

Douglas Scott Draper, Deborah Wiesler, Draper & Culpepper, New Orleans, LA, for Liljeberg Enterprises, Inc.

## MEMORANDUM OPINION

MENTZ, District Judge.

Before the Court are several motions filed by the parties to this litigation. First, the Court addresses two motions to disqualify the district judge filed by defendants St. Jude Medical Office Building Limited Partnership (the Partnership), St. Jude Hospital Complex Development Group, Inc. (Development Group) and Liljeberg Enterprises, Inc. (LEI).[1] Next, the Court addresses defendants' motion for leave to file affidavits and plaintiff Travelers Insurance Company's (Travelers) motion to strike affidavits. Last, the Court addresses the parties' cross motions for summary judgment.

### I. Defendants' motions to disqualify the district judge

Defendants, the Partnership, Development Group and LEI, seek disqualification of the district judge pursuant to 28 U.S.C. § 455(a) on the ground that his impartiality might reasonably be questioned, and pursuant to 28 U.S.C. § 455(b) on the ground that he has allegedly acquired a personal bias or prejudice against the defendants in these proceedings.

Title 28 of the United States Code § 144 provides,

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal

bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

A motion to recuse must be strictly construed for form, timeliness, and sufficiency in order to guard against the danger of frivolous attacks on the orderly process of justice. *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir.1972), *cert. denied*, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316. The procedural formalities of a motion to recuse must be precisely complied with. *United States v. Anderson*, 433 F.2d 856, 859 (8th Cir.1970).

The Partnership and Development Group filed their motions on December 17, 1993, and LEI filed its motion shortly thereafter on December 21st. Both motions were accompanied by an affidavit signed by John A. Liljeberg, Jr. and Robert Liljeberg, individually and as representatives of defendants. Counsel in both cases certified the Liljebergs' affidavit to be made in good faith and not for purposes of delay. At first blush, defendants appear to have satisfied the form requirements of 28 U.S.C. § 144.

As to their timeliness, the Court shall treat the motions to disqualify pursuant to 28 U.S.C. § 455(a) and 455(b) separately.

The § 455(a) motion fails as untimely and moot. The issues raised by defendants' latest 455(a) motion were addressed by the Court's Order and Reasons of November 19, 1993, in a related case *Travelers Insurance Co. v. St. Jude Hospital of Kenner, La., et al,* C.A. # 90–1983 c/w # 90–2601 (the Partnership Litigation). The text of that Order and Reasons is attached hereto as Appendix A, accompanied by the Court's minute entry of

---

1. LEI is the defendant in an adversarial proceeding brought by Travelers in the bankruptcy matter of Liljeberg Enterprises, Inc., (C.A. # 93–10295). The adversarial proceeding was removed to this Court and consolidated as C.A. # 93–2414 with Travelers' present suit against

the Partnership and Development Group, (C.A. # 93–1199). LEI's motion to disqualify is substantively identical to that of the Partnership and Development Group, although varying exhibits are attached to each motion.

December 20, 1993, denying defendants' motion for leave to file third amendment.

In their several previous motions on this subject defendants alleged to have learned of the judge's membership in private clubs on July 23, 1993. On October 1, 1993, the first motion was filed of six previous motions raising the 455(a) issue in three related cases. Of the four cases involving Travelers with various combinations of the Liljebergs and their companies, this case was the only one on October 1 which had not gone to trial or had judgment entered therein.[2] By waiting 2 and ½ months to file the present motions, defendants' actions belie their concern as to the Court's alleged appearance of partiality and expose the blatant untimeliness of their motions.

■ Defendants' 455(a) motions are also moot by their own admission. In their memorandum in support of their October 12, 1993, motion for continuance filed in this case, defendants stated,

A trial set [sic] has been set by this court on November 1, 1993, however, since the filing of the trial date two of the parties that are defendants in the instant case, Liljeberg Enterprises, Inc. and St. Jude Medical Office Building Partnership have filed a Rule 60(B) Motion for relief of judgment in cases in which they were previously defendants in suits brought by Travelers Insurance Company. Those cases were nos. 92–0058 and 90–1983 c/w 90–2601, all of which were heard by this court. The allegations in the Rule 60(b) motion address the question of whether or not Judge Mentz, who heard those cases, should have recused or disqualified himself. Those motions are to be heard on November 17, 1993 and are dispositive of

whether or not recusal or disqualification of the District Judge is appropriate in this case.

*These defendants stipulate that the determination of those motions would be dispositive of any complaints that the defendants would have in the instant case.* Emphasis added.[3]

By their own admission, defendants may not now raise a § 455(a) motion to disqualify.

■ A recusal motion is committed to the sound discretion of the trial judge against whom it is directed. *In re City of Houston,* 745 F.2d 925, 927 (5th Cir.1984). The Court need not, but nevertheless elects to construe defendants' language, "dispositive of any complaints that the defendants would have in the instant case," to mean "dispositive of any complaints pursuant to 28 U.S.C. § 455(a) only." Thus the Court shall entertain defendants' motion to disqualify pursuant to § 455(b).[4]

■ Whereas a § 455(a) motion is directed to a judge's appearance of partiality, § 455(b) addresses personal bias or prejudice of the judge and is raised for the first time in these related cases by defendants' present motions. Defendants' § 455(b) motions fail as untimely.

■ A litigant must file his affidavit of prejudice in support of a motion to disqualify as soon as practicable after discovery of the allegedly disqualifying facts. *Danielson v. Winnfield Funeral Home of Jefferson, Inc.,* 634 F.Supp. 1110 (E.D.La.1986), aff'd in part, *Dulaney v. Winnfield Funeral Home,* 820 F.2d 1222 (5th Cir.1987) (Table, No. 86–3433).

2. Rather than file a motion to disqualify in the instant case, four days after filing the original motions for relief for failure to disqualify in related cases, defendants filed a motion for summary judgment, to be considered below.

3. For the record, having commenced a seven week trial of an unrelated case on October 14, and days from issuing its final Order in an unrelated five-and-a-half-year long class action, the Court issued a minute entry October 15th, continuing the pre-trial conference and trial of this matter to be rescheduled by telephone conference, thereby mooting defendants' motion to

continue. In the same minute entry, the Court took under advisement cross motions for summary judgment and cancelled the hearings on these motions, to be discussed below.

4. 28 U.S.C. § 455(b) provides in relevant part:

(b) [Any judge of the United States] shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Since formal terms of court were abolished long ago, in Pomeroy v. Merritt Plaza Nursing Home, Inc., 760 F.2d 654, 658 (5th Cir. 1985), wherein plaintiff filed her motion "promptly after the judge made the offending remarks," the Fifth Circuit held the literal ten-day requirement of 28 U.S.C. § 144 to no longer apply:

Instead, courts have simply required a party to exercise reasonable diligence after discovering facts that show bias.[5]

In the present case, the Partnership and Development Group filed their motion to disqualify on December 17, 1993. This occurred almost five months after learning that the judge holds membership in the same private club as Travelers' board member and partners of Travelers' counsel, two and one half months after filing of the original motions for relief from judgment which raised the disqualifying issue in related cases, and seventeen days after receiving the Court's Order and Reasons alleged to have demonstrated the Court's bias against defendants. LEI filed its motion to disqualify on December 21 and noticed it for hearing on January 12 or twelve days before trial date.

The Court finds defendants' motions to disqualify pursuant to 28 U.S.C. § 455(b) to be untimely.[6] Defendants have also failed to show good cause for their delay, as specifically required by 28 U.S.C. § 144. U.S. v. Iddeen, 854 F.2d 52 (5th Cir.1988). Absent a showing of good cause, defendants' affidavit fails to satisfy the form requirements of 28 U.S.C. § 144.

Although defendants' motions pursuant to § 455(a) and (b) are untimely[7], the Court also addresses the legal sufficiency of defendants' affidavit for the record.

It is the duty of the judge against whom an affidavit to disqualify is filed, to pass upon the legal sufficiency of the facts alleged. Parrish v. Board of Com'rs of Alabama State Bar, 524 F.2d 98, 100 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); United States v. Townsend, 478 F.2d 1072 (3rd Cir.1973). The facts must be such that, if true, would convince a reasonable man that bias exists. Davis v. Board of School Commissioners, 517 F.2d 1044, 1051 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188; Parrish, 524 F.2d at 100; United States v. Thompson, 483 F.2d 527, 528 (3rd Cir. 1973).

The affidavit must identify and carefully delineate the time, place, persons, occasions and circumstances supporting the mover's belief of bias or prejudice. Parrish, 524 F.2d at 100; United States of America v. Partin, 312 F.Supp. 1355 (E.D.La.1970); Hall v. Burkett, 391 F.Supp. 237 (W.D.Okla. 1975). And lastly, the alleged bias must be "personal", as distinguished from judicial in nature. As stated by the Fifth Circuit in Phillips v. Joint Legislative Committee, Etc. 637 F.2d 1014, 1020 (5th Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982), reh. denied, 457 U.S. 1140, 102 S.Ct. 2974, 73 L.Ed.2d 1361 (1982), where evidence of particular judicial rulings, quotations from written opinions, and alleged remarks from the bench did not provide a basis for recusal,

The point of the distinction is that the bias 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' Thus, a motion for disqualification ordi-

5. See also U.S. v. York, 888 F.2d 1050 (5th Cir. 1989) (holding 28 U.S.C. § 455(b) require timeliness).

6. See Eisler v. United States, 170 F.2d 273, 83 U.S.App.D.C. 315 (1948) (affidavit filed on May 29 was untimely when the affiant first learned the identity of trial judge on May 20, even though affiant's attorney had been interrupted in his work in the meantime by the death of his brother); In re United Shoe Machinery Corp., 276 F.2d 77 (1st Cir.1960) (where affiant waited 27 days from the time at which the judge allegedly made

unfavorable comment against petitioner's general counsel, filing of affidavit untimely, even though 15 days of elapsed period were consumed in obtaining transcript of hearing at which comments were allegedly made).

7. The Court notes that the judge became a member of the Boston Club prior to becoming a federal district judge, as disclosed during the course of the requisite background investigation by the U.S. Attorney General, and as reported annually since 1984 in the Almanac of the Federal Judiciary.

*narily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench.* [Citations omitted] [Emphasis added]

The Court finds defendants' affidavit lacking for numerous reasons. Paragraph 7 of defendants' affidavit sets out their grounds for actual bias or prejudice,

Affiants further declare that they do not believe that they are going to receive a fair trial in this case because of the fact that the district judge to which this case is presently allotted has demonstrated his personal bias or prejudice against the defendant in his attack on John Liljeberg, in his reasons for denying the motion for relief from judgment, in his reference to the newspaper articles concerning the motions that were filed and in his reaction to the filing of those motions, and that said judge has a personal bias or prejudice against the affiants and the partnership and corporation which are controlled and affiliated with affiants which are defendants herein.

Conclusory in its import, paragraph 7 lacks specifics as to "time, place, persons, occasions and circumstances supporting the mover's belief of bias," and uses words such as "attack" and "reaction" without mention of a factual basis therefor.

The affidavit makes reference to "his reasons for denying the motion for relief from judgment". Clearly, such reasons are rendered by the Court in the exercise of its judicial function. Likewise, reference in a ruling to a newspaper article published the day prior to oral argument of an appeal is also judicial in nature. The Court must be mindful of violations of Rule 3.6 of the Rules of Professional Conduct, pertaining to trial publicity.

Lastly, with respect to the legal sufficiency of defendants' affidavit, the overwhelming thrust of defendants' affidavit is directed to defendants' concern with § 455(a) appearance of partiality, already addressed by the Court as untimely and moot pursuant to defendants' admission. Nevertheless, the Court notes paragraph 8 of the affidavit which states,

Affiants further declare that they believe that membership in the Boston Club alone which is notoriously known for its discrimination against certain minorities and the fact that at least one member of Travelers Insurance Company Board of Directors and various members of the law firm representing Travelers Insurance Company were [sic] members of the Boston Club are grounds sufficient to raise the appearance of lack of impartiality if not the lack thereof in itself.

This paragraph addresses the "appearance of lack of impartiality" ground of § 455(a). But it could be construed that the last seven words "if not the lack thereof in itself" is a reference to personal as opposed to judicial bias, that is, if a conditional phrase expressed negatively may be considered an allegation. Again, reaching to construe this as defendants' single reference to personal as opposed to judicial bias, the Court notes that defendants' allegation is supported only by conclusory and insubstantial language such as "they believe", "grounds sufficient", and "notoriously known."

Furthermore, assuming the facts regarding private club membership of a Travelers board member and various members of the law firm representing Travelers to be true, as the Court must, the social affiliation of the Court with these individuals as alleged, is still too tenuous to rise to the level of personal bias. *U.S. v. Murphy*, 768 F.2d 1518 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (where denial of § 455 motion was upheld despite the trial judge's and his family's vacation travel plans with the prosecutor and his family); *Matter of Billedeaux*, 972 F.2d 104 (5th Cir.1992).[8]

---

**8.** See also *Henderson v. Dep. of Public Safety and Corrections*, 901 F.2d 1288 (5th Cir.1990); *Parrish*, 524 F.2d at 98; *Sexson v. Servaas*, 830 F.Supp. 475 (S.D.Ind.1993); *Commonwealth of Pennsylvania v. Local Union 542*, 388 F.Supp. 155 (E.D.Pa.1974); *Williams v. Balcor Pension Investors*, 1990 WL 205805 (N.D.Ill. Nov. 28, 1990).

Lastly, assuming it to be true the Boston Club discriminates against "certain minorities", there is no evidence that the Liljeberg brothers, who own or control defendant companies, are members of such minorities. In sum, the allegations of defendants' affidavit are void of legal sufficiency.

On January 4, 1994, defendants filed a "Supplemental Affidavit in support of the Motion to Disqualify." This is a belated attempt to plead with more specificity their allegations of bias and prejudice. By its plain language, section 144 allows a party only one affidavit in any case. 28 U.S.C. § 144; *Phillips*, 637 F.2d at 1020.

As stated by the Court in *United States v. Partin*, 312 F.Supp. 1355, 1361 (E.D.La.1970), in which the affiant was denied a request to supplement his affidavit,

In passing upon a motion to recuse, based upon allegations of bias and prejudice, the Court is only required to inquire into the sufficiency and timeliness of the affidavit filed and 'a party may file only one such affidavit in any case.'

Thus, the Court will not consider the allegations of defendants' supplemental affidavit.[9]

9. The Court wishes to note for the record, however, that were the supplemental affidavit considered, it too would fail for legal insufficiency of the allegations. Each indication of bias or prejudice raised or elaborated upon by the Supplemental Affidavit is an allegation of what has come to be termed "judicial bias," as distinguished from personal bias, by the Fifth Circuit in *Phillips*, 637 F.2d at 1020.

The Court's reference in a footnote of its November 19 Order and Reasons to "Liljeberg's chicanery" was derived exclusively from reading the *only* case cited by defendants, cumulatively over 50 times in their various motions for relief from judgment and for disqualification. As directly requoted by this Court in its footnote 6 of the November 19 Order and Reasons, Judge Rubin's characterization "Liljeberg's chicanery" was quoted by the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 870, note 16, 108 S.Ct. 2194, 2207, note 16, 100 L.Ed.2d 855 citing the dissent of Judge Rubin in an unpublished opinion at 78a.

C.A. # 93–2414 is an adversarial proceeding removed from the bankruptcy of LEI and consolidated with the lead case before the Court, (C.A. # 93–1199). At issue in these cases is the timing of and consideration for an alleged stock transfer to LEI from the Partnership. At least part of LEI's Statement of Financial Affairs and a partial transcript were previously before the Court as exhibits in related matters, but the Court elected to review LEI's original Statement of Financial Affairs filed in the Bankruptcy Court for evidence of the Development Group stock and LEI loans to the Partnership. In so doing the Court came upon LEI's entry of "none" under item # 26 "office equipment, furnishings, and supplies", "none" under item # 27 "machinery, fixtures, equipment, and supplies used in business", and "none" under item # 33 "other personal property of any kind not already listed" of Schedule B—Personal Property. This was an apparent contradiction of Mr. Fonte's testimony at LEI's first creditors meeting that the "movables" disputed in the Partnership Litigation (C.A. # 90–1983) were owned by LEI, testimony which had been highlighted by Travelers in another related suit against St. Jude Hospital of Kenner, La. (SJH), C.A. # 93–0173.

F.R.C.P. 56(g) addressing affidavits made in bad faith, states that "should it appear to the satisfaction of the court *at any time* that any of the affidavits presented pursuant to this rule are presented in bad faith ... [the Court may award costs to the non-offending party], and any offending party or attorney may be adjudged guilty of contempt." (Emphasis added.) Before the Court is defendants' motion for leave to file affidavits, one of whose affiant is Mr. Ken Fonte, listed and noticed as counsel for LEI in the adversarial proceeding in bankruptcy, but changed to being a witness in the consolidated case once it was withdrawn to this Court from Bankruptcy. Consequently, the Court elected to direct questions to determine Mr. Fonte's precise status with the Liljebergs and their affiliated companies. Although not a party to the instant litigation, SJH is the general partner of the Partnership, typically the manager and "brains" of a limited partnership. It was not unreasonable for the Court to examine Mr. Fonte's precise past and present status vis-a-vis SJH and the Liljeberg affiliates, particularly as he signed SJH's "List of Partnership Property which may be discussed" in C.A. # 93–0173 which listed the very "movables" Mr. Fonte had previously claimed at the creditors meeting to be owned by LEI.

In attempting to determine whether the Liljebergs and/or their affiliated companies now or in related cases before this Court, filed affidavits in bad faith, the Court directed questions to counsel in all of the four related cases presently or previously before the Court, subject to sanctions for failure to respond. The Court notes that in its response to these questions, LEI stated that the Statement of Financial Affairs had been amended to reflect various personal property owned by the Corporation.

The Court reiterates that none of the information contained in this footnote is material to its ruling on the instant motion, which fails initially as untimely, and as well, for lack of a legally sufficient affidavit. The Court nevertheless elected to elaborate upon the circumstances surrounding some of its judicial renderings for the record only.

*Partin,* 312 F.Supp. at 1361: *See also Pomeroy,* 760 F.2d at 658 *et seq.*

Based on the reasons set forth above, the Court finds the facts alleged in defendants' affidavit would not convince a reasonable person that the judge holds personal bias or prejudice against defendants, formed from any matters other than what he has learned from his participation in this and related cases.

Thus, after consideration of the affidavit, the memoranda, the record, the law, and oral argument of counsel January 14, 1994 [10], the Court denies defendants' motions to disqualify on the grounds that it is untimely and supported by a legally insufficient affidavit.

■ In light of defendants' belated and frivolous claim of bias and prejudice and the unnecessary multiplication of defendants' § 455(a) claim, the Court awards reasonable costs, expenses, and attorneys' fees to plaintiff pursuant to 28 U.S.C. § 1927.

## II. Defendants' motion for leave to file affidavits and Travelers' motion to strike affidavits

Also before the Court is defendants' motion for leave to file affidavits of Ken Fonte and Vincent Messina in connection with pending cross-motions for summary judgment. Mr. Fonte, formerly house counsel for LEI and presently listed as co-counsel for LEI's bankruptcy, is a witness in the instant case.[11] Mr. Messina is an expert witness as a certified public accountant. The cross-motions were filed October 5, 1993 and set for hearing on October 20. The Court took the motions under advisement on the 15th. Defendants' motion for leave to file the affidavits was filed October 19, after the Court had taken the cross-motions under advisement

and the day before both motions for summary judgment had been scheduled for hearing. Travelers filed a motion to strike the affidavits on the basis that they were untimely. For the following reasons, the Court grants defendants' motion for leave to file and denies Travelers' motion to strike.

F.R.C.P. 56(c) *Summary Judgment* provides in part,

> (c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. *The adverse party prior to the day of hearing may serve opposing affidavits.* (Emphasis added.)

The affidavits of Messrs. Fonte and Messina, containing information relative to the timing, execution, and fair market value of the consideration for the transfers Travelers seeks to revoke, may be construed to be filed in opposition to Travelers' motion and were indeed filed "prior to the day of hearing". Despite being filed after the Court cancelled the hearing and submitted the motions, the Court shall grant defendants leave to file pursuant to F.R.C.P. 56(c) above.

### A. Mr. Fonte's affidavit

However, F.R.C.P. 56(g) *Affidavits Made in Bad Faith,* provides,

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purposes of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees; and any

---

10. While not necessary to evaluating the legal sufficiency of the Affidavit, the Court notes that in oral argument Mr. Wessell referred to the private club at issue as "a business-type of club." There is no evidence that the Boston Club is anything more than a private social club unlike other clubs found to be business clubs, which have conference rooms, equipment, stenographers, and/or private facilities for conducting business, and allow local luncheon guests, tax deductible dues, and/or dues paid by a third party.

11. Mr. Fonte also served as trial attorney in the three previous related cases heard by the Court, the Partnership Litigation (C.A. # 90–1983 c/w 90–2601), *Travelers Insurance Company v. Liljeberg Enterprises, Inc.* C.A. # 92–58, and *Travelers Insurance Company v. St. Jude Hospital of Kenner, Louisiana, Inc.* C.A. # 93–0173.

LEI filed bankruptcy January 27, 1993, (C.A. # 93–10295). Therein Mr. Fonte is currently listed as co-counsel for LEI with Mr. Douglas Draper.

offending party or attorney may be adjudged guilty of contempt.

 The Court will not consider any of the facts delineated by the affidavit of Mr. Fonte, which the Court specifically finds to be presented in bad faith pursuant to F.R.C.P. 56(g). The Court further orders defendants to pay to Travelers the amount of the reasonable expenses which the filing of the affidavits caused Travelers to incur, including reasonable attorneys fees, specifically covering, but not limited to, the reasonable expenses incurred in connection with Travelers' motion to strike.

The facts demonstrating bad faith first developed in the related case *"Travelers Insurance Company v. St. Jude Hospital of Kenner, La., Inc., et al"* C.A. # 90–1983 (the Partnership Litigation). Mr. Fonte served as trial attorney for the defendants, the Liljeberg brothers and several companies they controlled. In that case, in August, 1990, Travelers issued a request for production of documents to LEI, the Partnership and John and Robert Liljeberg, individually. Each of the requests sought production of documents referring, relating or pertaining in any way to transfers among the Liljeberg entities, including Development Group, the Partnership and LEI.[12]

The Partnership, LEI and the Liljebergs, represented by Mr. Fonte failed to produce any documents in any way relating to the purported transfer by the Partnership to LEI. Specifically, neither the resolutions nor the stock certificates allegedly authorizing and reflecting the transfer between the

Partnership and LEI were produced. Surfacing now in this case, these very stock certificates and resolutions, according to Mr. Fonte's affidavit, were allegedly drawn by him and in his custody since the date of their execution on May 29, 1990, until delivery to bankruptcy co-counsel, Mr. Draper, "sometime early 1993."

In deposition testimony LEI accountant/financial officer Steven Grishman testified that drafting the resolutions fell within his duties at the time and denied their existence as late as October, 1991[13]. The 1990 Louisiana Partnership Income tax return evidences *at year end 1990* the Partnership still owned Development Group's stock[14]. Nevertheless, Mr. Fonte now avers that due to a week's delay in their drafting on May 29, 1990, he himself "drew up the transfer of the Stock Certificates and Resolutions".

At the time Travelers sought production of these documents, the defendants did not acknowledge the existence of the documents, and did not claim to have misplaced the documents. Even now that they have been produced, the defendants do not claim to have forgotten of their existence or the transaction they evidenced. There is no claim of privilege as to these documents or their execution, nor does the Court find basis for such a claim.

The import of Mr. Fonte's affidavit is to defeat Travelers' move to revoke the Partnership/LEI transfer. In light of LEI's and the Partnership's failure to produce them as long ago as August, 1990, and other evidence questioning their existence May 29, 1990[15],

12. See e.g. Requests # 11 and # 19 of Travelers' Exhibit # 1 accompanying its opposition to defendants' motion for summary judgment, and Request # 22 of Travelers' Exhibit # 2 accompanying same.

13. Exhibit 6 to Travelers' motion for summary judgment.

14. Exhibit 5 to Travelers' motion for summary judgment.

15. The Court notes that it instructed counsel to file the stock register of Development Group with the Court, as opposed to the produced copies of the certificates. Counsel for LEI failed to produce originals *or* copies of pre-numbered certificates 1, 2, 3, and 4 although copies of pre-numbered certificates 5, 6, 7, and 8 were pre-

sented (i.e. re-numbered certificates 2000, 2001, 2003, and 2004 respectively.) Counsel for Development Group responded that there is no stock register for Development Group. But as the LEI Consolidated Financial Statements for year-end 1/31/90 list Development Group as a wholly owned subsidiary of LEI (Exhibit 9 to Travelers' motion) the Court wishes to see all stock issued by Development Group and has so ordered herein.

The Court further notes that Mr. Fonte failed to attach to his affidavit a copy of Development Group Certificate # 2001 as alleged, but notes that an illegible copy of same was attached as part of Exhibit C to defendants' motion for summary judgment and a legible copy was presented to the Court by a January 4, 1994 letter from Mr. Draper, evidently supplementing LEI's response

defendants may not employ Mr. Fonte's affidavit to now resurrect the stock certificates and resolutions.

Under these circumstances, defendants are prevented from attempting to establish at this late date the endorsement and/or reissuance of the Development Group stock certificates to LEI and the transfer resolutions related thereto. Indeed, in light of their failure to produce these documents as requested in the earlier related case and the indisputable ongoing knowledge of their existence, the Court finds defendants to have presented Mr. Fonte's affidavit in bad faith and sanctions defendants accordingly.

### B. Mr. Messina's preliminary expert report and affidavit

■ Before considering Mr. Messina's affidavit, the Court must first address Mr. Messina's preliminary expert report. The preliminary report was not attached to Mr. Messina' affidavit as alleged. Nevertheless, the Court is aware of its contents by means of a copy attached as Exhibit "C" to defendants' opposition memorandum.[16] The report was delivered to Travelers late October 4, 1993, six days after September 28th, the last expert report deadline extension agreed upon by the parties. By letter dated and telecopied to defendants on October 4, Travelers, having already agreed to two extensions, reserved its right to oppose introduction of any expert testimony by Mr. Messina.[17]

to the Court's minute entry of December 17, 1993.

16. Also, a copy of the facsimile transmission to counsel for Travelers at approximately 4:00 P.M. on October 4, 1993, is attached as Exhibit "F" to the Response of Travelers to the Court's Minute Entry of October 26, 1993.

17. The letter reads:
Under the Court's scheduling order in the captioned matter, defendants' expert reports were originally due in early September, 1993. Bill subsequently requested, and I agreed to extend that deadline until September 23 and then September 28. As of this morning, I have not received any preliminary reports from Vince Messina who has been designated as an expert by the defendants. Accordingly, this is to ad-

October 5th was the last day for filing dispositive motions. Messina's preliminary report was delivered to Travelers at approximately 4:00 P.M. the preceding day, six days after the agreed upon deadline for the report, and twenty-one days after the final date for exchange of defendants' expert report established by the Court's scheduling order. Accordingly, the Court strikes Mr. Messina's preliminary report as untimely.

Although denying Travelers' motion to strike Mr. Messina's affidavit as untimely, the Court will not consider any aspects of the affidavit which are based on Mr. Messina's preliminary report. This includes specifically, but is not limited to, paragraph 5, which reads,

Because of the fact that the partnership was indebted to LEI in excess of the $978,-000 on May 29, 1990, the transfer of the 800 shares of stock which the partnership owned in Complex Development to LEI in payment of that indebtedness rendered the partnership solvent (sic) after the transaction.[18]

### C. The Pumilia/Turnbull reports and the Pumilia affidavit

■ On its own motion, the Court also strikes the preliminary report of October 4, 1993 and the final report of October 27, 1993 of Messrs. Turnbull and Pumilia, defendants' real estate appraisers, as untimely and incomplete.

vise you that I reserve the right to oppose introduction of any expert testimony by Mr. Messina on the grounds that his report has not been tendered timely.
See Exhibit D to Travelers' Response to 10/26/93 Minute Entry, October 4, 1993 letter from Travelers' counsel, Brent Barriere, to defendants' counsel, Douglas Draper and William Wessel.

18. The Court notes that Mr. Messina's assessment that the Partnership/LEI transfer "rendered the partnership solvent after the transaction" is a direct contradiction of defendants' admissions that on May 22, 1990 and May 29, 1990, the total of the Partnership's liabilities exceeded the total of the Partnership's fairly appraised assets. See Exhibit 4 to Travelers' motion for summary judgment.

In its minute entry of October 26, 1993 the Court, referring to an earlier continuance of the trial, stated:

On October 15, 1993, the Court continued the pre-trial conference and trial of this matter to be reset by telephone conference at a later date. In so doing the Court did not reopen deadlines already past.

The October 4, 1993 preliminary Pumilia/Turnbull report was both untimely and fatally incomplete. While the report purported to give an estimate as to the fair market value as of May 1, 1990 of real estate parcels B–2 and B–3 at issue in this litigation, the section which was to include that value was left blank.[19]

Unlike the circumstances surrounding the Messina report, there is no evidence before the Court that any extension of the deadline was raised or agreed upon for the Pumilia/Turnbull reports. Neither Mr. Pumilia, nor Mr. Turnbull, were noticed for deposition, although both men were listed as real estate appraisers on defendants' witness list.

According to the Court's scheduling order, the deadline for defendants' expert reports was September 13. This deadline and other deadlines already past were specifically not reopened. The preliminary Pumilia/Turnbull report, filed October 4 was untimely and worse, incomplete, omitting as it did the critical May 1, 1990 value of the real estate at issue.

There is no evidence of just cause for the delay. The data necessary for such an appraisal has been available to defendants for years. Travelers was prejudiced by not having the May 1, 1990 value in hand for the dispositive motion deadline of October 5, while defendants conveniently had the fair market value figure by October 12 for use in their opposition to Travelers' motion for summary judgment.

The Court strikes both the preliminary and the final Pumilia/Turnbull report as untimely. Likewise, any aspect of Mr. Pumilia's affidavit derived from these reports will not be considered by the Court. Filed and dated October 12, 1993 and attached as Exhibit "D" to defendants' opposition, the paragraph of the affidavit which will not be considered reads:

I have examined the 17.476 acres of property in Kenner, La. designated as Parcel B–2 and B–3, along with my associate James Turnbull and we are compiling our report showing the valuation of the property as of May 1, 1990 at $925,000 and as of September 20, 1993 at $464,500.

## III. The cross-motions for summary judgment

The Court now addresses the parties' cross-motions for summary judgment. Travelers has moved this Court to revoke transfers between certain Liljeberg entities allegedly undertaken to shield assets from Travelers claims. These claims first arose in March, 1990, when the Partnership defaulted in repayment of its approximate $25,000,000 debt to Travelers. At the time the Partnership owned at least three significant assets— two parcels of undeveloped real estate, known as B–2 and B–3, and the St. Jude Medical Office Building, situated upon B–1 and mortgaged as security for Travelers' loan. Moratorium negotiations regarding the loan failed, and in June of 1990, Travelers filed suit to enforce its claims against the Liljeberg brothers and some of the affiliated companies they controlled, including two defendants in the present suit, the Partnership and LEI. Although an affiliated company, defendant Development Group was not a party to the preceding suit, C.A. # 90–1983 c/w 2601 (the Partnership litigation).

In the interim, the Partnership made two transfers to divest itself of the undeveloped real estate. The first of these occurred May 22, 1990. This was accomplished by means of an Act of Exchange whereby the Partnership transferred B–2 and B–3 to affiliated defendant Development Group, in exchange for 80% of Development Group's common stock, i.e. 800 shares.

---

19. *See* Exhibit E of Travelers' Response to

10/26/93 Minute Entry.

Seven days later, on May 29, 1990, the second transfer allegedly[20] occurred. This transfer consisted of the Partnership's transferring the 800 Development Group shares to affiliated defendant LEI. Defendants claim the stock was transferred in satisfaction of indebtedness owed by the Partnership to LEI.

Travelers moves this Court to summarily revoke both transfers pursuant to La.Civ. Code Art. 2036 as having increased the Partnership's insolvency. Defendants admit the Partnership was insolvent at the time of the transfers, but contend (1) the Partnership/Development Group transfer was an exchange of assets approximately equal in value and (2) the Partnership/LEI transfer had a positive effect upon the solvency of the Partnership.

Defendants move the Court to summarily rule that revocation of both transfers is barred by prescription pursuant to La.Civ. Code Art. 2041 due to Travelers' actual or constructive knowledge of the transfers for over a year prior to the filing of this lawsuit. The Court shall address the issues raised by both motions for summary judgment as applied to each transfer.

### A. The Partnership/Development Group transfer of May 22, 1990

#### 1. Prescription

The transfer by the Partnership of parcels B–2 and B–3 in exchange for 80% of Development Group's common stock occurred pursuant to an Act of Exchange executed May 22, 1990 by the Liljebergs. Travelers claims to have first learned of the transfer from the deposition testimony of defendants' financial officer Grishman taken June, 1991. This is supported by the deposition testimony of Travelers' financial expert, Ralph A. Dazet[21] and the exhibit Mr. Dazet generated for his testimony on August 1, 1991 at the trial in C.A. # 90–1983.[22] Travelers filed this action on April 8, 1993, nearly two years subsequent to its knowledge of the transfer.

Revocatory actions under Louisiana law are governed by La.Civ.Code Art. 2036 et seq. Article 2041 of the Louisiana Civil Code, as revised in 1984, provides the applicable prescriptive period:

> The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.

Defendants argue revocation of this transfer is barred by prescription due to Travelers' actual knowledge of the transfer no later than June, 1991, more than one year prior to filing suit. Defendants cite as support of their position Comment (b) to article 2041, which states:

> The prescriptive period of C.C. Art. 1994 (1870) runs from the date of judgment. Since the revised articles on revocatory action have been drafted to cover unliquidated claims, the "date of judgment" is not a relevant starting point for determining when prescription has run.

Defendants' contention is initially convincing. However, Travelers counters that it was not in a position to act upon its knowledge of the Partnership/Development Group transfer until entry by this Court of its Amended Judgment in C.A. # 90–1983 on December 3, 1992.

20. In its First Amended Complaint, Travelers has asserted a claim that this transfer was a simulation and for purposes of its motion for summary judgment only, proceeded on the basis that the transfer actually occurred. *See* footnote 3 of Travelers' memorandum in support.

21. *See* pp. 5 and 38 of Dazet's deposition attached as Exhibit A to defendants' motion for summary judgment.

22. *See* Exhibit B to defendants' motion for summary judgment, "St. Jude Medical Office Building Limited Partnership, Selected Line Items from Partnership Income Tax Returns."

This exhibit was prepared by Mr. Dazet and introduced in the trial of C.A. # 90–1983 as Exhibit 69. The exhibit lists a value for land as $2,236,285 in 1989 and $743,193 in 1990. The exhibit also indicates a 1989 value of $21,042,565 under "Subtotal" [of buildings and other depreciable assets, construction in progress, and intangible assets], and as $16,348,642 in 1990. Both 1990 figures have asterisks which reference "The reduction in these assets is due to an exchange on May 22, 1990 for 80% of the outstanding common stock of St. Jude Hospital Complex Development Group, Inc."

Throughout the Partnership litigation, it was the position of the defendants therein that Travelers' sole claim was *in rem*, and that its remedies were limited to judicial seizure and sale of the collateral granted by the Partnership. The Partnership's *in rem* defense was detailed in its answer and the Pre-trial Order. Travelers' position was that in addition to the *in rem* liability, the Partnership was personally liable to Travelers as a result of negligent misrepresentations regarding rental payments.

The Court finds as a matter of law that until there was a judicial determination that Travelers had *in personam* claims against the Partnership, Travelers could have no claim upon the assets transferred by the Partnership. The Amended Judgment, entered pursuant to the jury's findings, held the Partnership personally liable to Travelers.

In *First Federal Sav. & Loan v. Jones,* 620 So.2d 408 (La.App. 3 Cir.1993), *writ denied,* 629 So.2d 347 (La., Nov. 5, 1933), also a revocatory action, the Court addressed the apparent inconsistency between the wording of Article 2041 and the express purpose of the article in its comments, and cited *Rayne State Bank & Trust Co. v. Nat'l Union Fire Ins. Co.,* 483 So.2d 987 (La.1986), wherein the Louisiana Supreme Court explained,

> Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear, in order for the prescriptive period to commence, the plaintiff must be able to state a cause of action—both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act.

The Court recognizes that December 3, 1992, the "date of judgment", is no longer relevant as the date upon which the *amount* of the claim is established, previous to revision of the starting point for prescription necessary for covering liquidated claims. The Court holds, however, that given the particular *in rem* versus *in personam* dispute of the Partnership Litigation, December 3, 1992 is the critical date from which the very *existence* of Travelers' present claim vested. Until the Court judged the Partnership to be personally liable to Travelers, Travelers had no standing to seek revocation of the Partnership's transfer to Development Group.

This action was commenced by Travelers on April 8, 1993, within a year of the Court's entry of its Amended Judgment on December 3, 1992,[23] and within three years of the actual transfer. The Court holds as a matter of law that revocation of the Partnership/Development Group transfer is not barred by prescription.

### 2. Effect of transfer on the Partnership's insolvency

Pursuant to La.C.C. Art. 2036,

> An obligee has the right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligor arose, that causes or increases the obligor's insolvency.

Defendants have admitted the insolvency of the Partnership as of May 22, 1990. Travelers seeks to revoke the Partnership/Development Group transfer as having increased the Partnership's insolvency. Travelers values parcels B–2 and B–3 at $6,219,347 [24]; defendants argue a value of $925,000 [25]. The

---

**23.** The action also was commenced within a year of August 18, 1992, when the Court entered Judgment, but due to the immediate filing of defendants' motion for partial new trial or alternatively, to amend or alter the judgment, the Court finds the date of entry of the Amended Judgment to be controlling.

**24.** Travelers' footnote 17 to its memorandum in support states: "In its 1990 Louisiana tax return, Schedule I [attached as Travelers Exhibit 5], the Partnership valued the [Development Group] stock at $6,219,347. This was the value placed

on parcels B–2 and B–3. The Partnership apparently neglected to account for the fact that it received only 80% of the Development Group common stock." *See also* footnote 25.

**25.** This figure is derived from Pumilia's affidavit discussed in Part II of this opinion and attached as Exhibit "D" to defendants opposition. Somewhat perplexing is defendants' argument the real estate was valued at $925,000 contrasted with their contention in # 18 of their Statement of Material Facts in response to Travelers' Statement of Uncontested Material Facts that "parcels

Court expressly does not undertake to determine the fair market value of these parcels of real estate. However, it is undisputed that for the Partnership's complete ownership of parcels B–2 and B–3, the Partnership received only 80% of the outstanding stock of Development Group.

■ Travelers maintains the Partnership suffered a loss on the exchange because as of May 22, 1990, Development Group was a shell corporation with no assets having any economic value other than the property it received from the Partnership. In support of its position Travelers attached to its motion LEI consolidated financial statements, including Development Group, for the years ending January 31, 1988, 1989, and 1990.[26] These statements were prepared "in conformity with generally accepted accounting principles", signed by the Liljebergs as management "responsible for their integrity and objectivity", and submitted to three banks.

Exhibit 1 to the year end 1/31/89 statement shows Development Group with a negative net worth of $950.17[27]. By the January 31, 1990 statement, Development Groups' negative net worth increased to $1,271.00. The January 31, 1990 consolidated balance sheet shows total assets of $0.00.

By contrast, defendants state in the factual background of their opposition,

Prior to the transfer, the assets of St. Jude Complex Development Group included two (2) Rolls Royce automobiles, acquired at a cost of $100,000 each. In addition, St. Jude Complex Development also owned various furniture and fixtures, which although depreciated upon the books of the corporation, had value. When St. Jude

MOB [the Partnership] received 80% of the common stock of St. Jude Complex Development, it received an asset approximately equal in value to the one it exchanged therefor.

Defendants suggest by their argument that Development Group had valuable assets but do not offer one iota of evidence in support of their contention—not a franchise or income tax return, not a single bill of sale of furniture, not one automobile registration certificate, not even an automobile insurance policy showing the owner of the car.

Similarly, defendants contend in their statement of material facts that due to the error of the accountant for the company, the two (2) rolls Royces were never placed upon the books of the corporation.[28] This is a critical fact for which defendants offer no evidence whatsoever.

■ The Court previously determined that it would not consider the value of $925,-000 cited in Pumilia's affidavit (defendant's opposition Exhibit D). But were the Court to allow Pumilia's figure, defendants still failed to offer any proof of the existing value of Development Group *prior* to the transfer.[29] Defendants may not defeat Travelers motion for summary judgment by unsupported allegations and conclusions. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The uncontested facts in evidence before the Court are that Development Group was in essence a shell corporation with minimal value prior to the Partnership' transfer of B–2 and B–3 on May 22, 1993. By receiving only 80% of Development Group's stock in exchange for unencumbered real estate it

B–2 and B–3 were worth approximately $500,-000." This latter figure is unsupported by any evidence.

26. *See* Exhibits 7, 8, and 9 to Travelers' motion for summary judgment; and Excerpts of Steven Grishman deposition, Vol. II, pp. 98–99, Exhibit 14 to Travelers' motion for summary judgment, in which he testified that Development Group had de minimus assets prior to the transfer.

27. Defendants admit that LEI's 1/31/89 consolidated financial statements reflect that Development Group had no operations or income and a negative net worth of $950.17.

28. *See* # 12 of Defendants' Response to Travelers' Statement of Uncontested Material Facts.

29. Even assuming $925,000 to be the correct fair market value of B–2 and B–3 on May 22, 1990, for Travelers to have come out even on the exchange, Development Group would have had to have been worth $231,250 prior to the exchange. ($925,000 = .80x; x = $1,156,250; $1,156,250 − $925,000 = $231,250). Defendants offer no evidence to this effect.

owned outright, the Partnership suffered a financial loss. There can be no genuine dispute that the Partnership/Development Group transfer increased the insolvency of the Partnership, and therefore is subject to revocation.

## B. The Partnership/LEI transfer of May 29, 1990

Travelers also seeks revocation of the Partnership/LEI transfer of May 29, 1990, as having increased the insolvency of the Partnership. Defendants admit the insolvency existed prior to the transfer, but claim the transfer decreased the Partnership's insolvency by cancellation of an equal or greater value of the Partnership's debt to LEI. Defendants further claim revocation to be barred by the Partnership's constructive knowledge of the transfer over a year before filing suit. Defendants' arguments are totally without legal merit or evidentiary substantiation.

### 1. Prescription

■ Defendants' offer nothing to substantiate their claim that Travelers had actual or constructive knowledge of the Partnership/LEI transfer. The uncontested facts are that Travelers had no knowledge of this transfer until January, 1993, in connection with LEI's bankruptcy filing. Travelers did not learn of this transfer because the Partnership and LEI failed to produce the documents evidencing the Partnership/LEI transfer in response to Travelers' requests for production of documents in C.A. # 90–1983.[30] Having failed to proceed with clean hands, defendants may not impute constructive

knowledge to Travelers for "neglecting" to request the stock registry of Development Group, which was not a party to the Partnership litigation.[31]

Nevertheless, as in the instance of the Partnership/Development Group transfer, had Travelers somehow learned of the Partnership/LEI transfer, it could not assert a claim to revoke the transfer until December 3, 1992, when the Court entered its Amended Judgment in the Partnership Litigation less than a year before the filing of this suit. The Court holds as a matter of law that revocation of the Partnership/LEI transfer is not barred by prescription.

### 2. Effect of transfer on insolvency of the Partnership

■ LEI claims that the Development Group stock was transferred to LEI in satisfaction of indebtedness owed LEI by the Partnership. LEI's alleged loans to the Partnership cannot serve as consideration for Partnership's Development Group stock because LEI has offered no evidence that the Partnership was indebted to LEI in any amount, apart from ¶ 5 of Mr. Messina's affidavit unconsidered by the Court.[32] Defendants offer nothing to substantiate their claim that "there were additional loans and/or advances made by LEI which were not at issue and not addressed in the [partnership] litigation."[33]

To the contrary, the jury in the Partnership Litigation found LEI to be a debtor to the Partnership in excess of $770,000, having failed to pay substantial rentals due unto the

---

**30.** See footnote 12.

**31.** The Court notes that # 33 of Travelers' Statement of Uncontested Material Facts states,

On January 28, 1993, LEI filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. After the filing, LEI advised Travelers for the first time that LEI, rather than the Partnership, claimed to be the owner of the Development Group.

Defendants stated "Denied" in # 33 of its response to Travelers Statement of Uncontested Material Facts. Defendants improperly argued that Travelers should have known of the Partnership/LEI, i.e. that Travelers had constructive knowledge. At no time do defendants allege or

substantiate when Travelers had actual knowledge of the Partnership/LEI transfer. Although defendants denied Travelers material fact # 33, this unsupported allegation is insufficient to defeat Travelers' motion.

**32.** There too, the Court notes, neither defendants' memorandum, Mr. Messina's preliminary report, nor his affidavit introduced a single document evidencing the Partnership's indebtedness to LEI, specifically not even one promissory note, as required by Paragraph 9 of the Limited Partnership Articles (Exhibit B of Defendants' opposition).

**33.** See # 29 of Defendants' Response to Travelers' Statement of Material Facts.

Partnership.[34] LEI is precluded from asserting that cancellation of indebtedness to LEI served as consideration for the transfer.

There being no evidence before the Court of any consideration for the Partnership/LEI transfer, it is undisputed that the Partnership/LEI transfer increased the Partnership's insolvency with its occurrence May 29, 1990, and is therefore subject to revocation.

### C. Conclusion

Having determined that each of the two transfers at issue increased the already existing insolvency of the Partnership by their occurrence, and that neither transfer is barred from revocation due to prescription, the Court finds there to be no genuine issues of material fact to prevent its granting Travelers' motion for summary judgment.

In conclusion, as stated by the Fifth Circuit in *Fontenot v. The Upjohn Company,* 780 F.2d 1190, 1196 (5th Cir.1986),

Absent evidence, direct, circumstantial, or inferential, that would create a genuine issue of fact, and absent any suggestion concerning the utility of additional time for further discovery, the motion should be granted.

Such is the case with respect to Travelers' motion for summary judgment.

In view of the foregoing reasons,

**IT IS ORDERED THAT**

1. The motion to disqualify trial judge by defendants St. Jude Medical Office Building Limited Partnership and St. Jude Hospital Complex Development Group, Inc., is **DENIED.**

2. The motion to disqualify trial judge by defendant Liljeberg Enterprises, Inc., is **DENIED.**

3. The motion for leave to file affidavits by defendants, St. Jude Medical Office Building Limited Partnership, St. Jude Hospital Complex Development Group, Inc. and Liljeberg Enterprises, Inc., is **GRANTED.**

4. The motion to strike affidavits by plaintiff, Travelers Insurance Company, is **DENIED.**

5. The motion for summary judgment by plaintiff, Travelers Insurance Company, is **GRANTED.**

6. In connection with the granting of Travelers' motion for summary judgment, the Court **DIRECTS** both parties to submit a proposed form of judgment.

7. The motion for summary judgment by defendants, St. Jude Medical Office Building Limited Partnership, St. Jude Hospital Complex Development Group, Inc., and Liljeberg Enterprises, Inc., is **DENIED.**

8. Travelers' action for simulation is rendered **MOOT** by this ruling.

9. Reasonable costs, expenses, and attorneys' fees incurred in connection with defendants motion to disqualify are **AWARDED** to plaintiff pursuant to 28 U.S.C. § 1927, and plaintiff is **DIRECTED** to submit an affidavit of costs, expenses and fees related to defendants' motion to disqualify by **WEDNESDAY, FEBRUARY 2, 1994** at 5:00 P.M., subsequent to which the Court will fix a reasonable amount.

10. Reasonable expenses, including reasonable attorneys' fees, which the filing by defendants of Mr. Fonte's affidavit caused plaintiff to incur, specifically covering but not limited to, the reasonable expenses incurred in connection with Travelers' motion to strike, are **AWARDED** to plaintiff pursuant to F.R.C.P. 56(g), and plaintiff is **DIRECTED** to submit an affidavit of expenses and fees related thereto by **WEDNESDAY, FEBRUARY 2, 1994** at 5:00 P.M., subsequent to which the Court will fix a reasonable amount.

11. Defendants, St. Jude Medical Office Building Limited Partnership, St. Jude Hospital Complex Development Group, Inc. and Liljeberg Enterprises, Inc., **SHALL PRODUCE** to the Court the stock register and all of the original stock certificates, preferred, common, or otherwise, of St. Jude Hospital Complex Development Group, Inc., whether

---

**34.** *See* interrogatories # 1, 2, and 9 of the jury verdict in C.A. 90–1983, attached as Exhibit 19 to

Travelers' motion for summary judgment.

retired, issued, reissued, or not as yet issued, specifically including, but not limited to, the pre-numbered certificates # 1, 2, 3, and 4 and re-numbered certificates # 2000, 2001, 2002, 2003, 2004, by 5:00 P.M., **THURSDAY, JANUARY 27, 1993,** or be held in contempt of Court.

12. Each party to bear its own **COSTS**, except as otherwise provided herein.

### APPENDIX A

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

**The Travelers Insurance Company**

v.

**St. Jude Hospital of Kenner, La., Inc., et al**

**Civ. A. Nos. 90–1983, 90–2601.**

### ORDER AND REASONS

Before the Court are several motions involving the parties to this action which are Travelers Insurance Company as plaintiff, and St. Jude Hospital of Kenner, La. (SJH), St. Jude Medical Office Building Limited Partnership (the Partnership), Liljeberg Enterprises, Inc. (LEI); Krown Drugs, Inc. (Krown), John A. Liljeberg and Robert Liljeberg (collectively, the Liljebergs), as defendants.

The Court finds that an evidentiary hearing is not necessary. For the following reasons the Court hereby **DENIES** defendants' motion to disqualify Judge Henry A. Mentz, Jr. from hearing defendants' motion for relief, **DENIES** defendants' motion for relief from judgment, and **DENIES** defendants' motions to amend, which thereby renders plaintiff's motion to strike **MOOT**[1]. After outlining the background of this proceeding, the Court shall address the motions.

This Court has presided in four separate actions involving Travelers, the Liljebergs and entities controlled by them[2], arising out of the Partnership's default on payment of its debt to Travelers. In October, 1985, Travelers provided the Partnership permanent financing of $25,000,000, secured by a first priority mortgage on St. Jude medical office building and a collateral assignment of all its leases. Substantial amounts of these funds were used to purchase luxurious improvements to LEI tenant space and to pay interest on the Partnership's debt to Travelers. The Partnership defaulted on its payments to Travelers in February, 1990.

Following failed moratorium negotiations, Travelers indicated its intention to foreclose on the medical office building. Defendants responded first with threats to render the building uninhabitable by terminating water and sewerage services, and subsequently, by actually gutting the lavish tenant improvements, removing wall paneling, doors, appliances, bathroom fixtures, curtains and blinds.

Travelers filed a complaint in June, 1990, seeking *inter alia* seizure and judicial sale of the medical office building, unpaid rent from tenants Krown and LEI under their respective leases, joint liability of the partnership for the unpaid rent of affiliates Krown and LEI due to the partnership's consistent misrepresentations of timely collection of their rents, compensation for destruction of the improvements, seizure and sale of the movables surreptitiously removed from the building, and reimbursement for the cost of installing another storm and sewerage system in response to defendants' threats to block the existing one. The case was tried to a jury from July 29 through August 8, 1991. The jury returned a verdict in favor of Travelers and against all defendants, except SJH dismissed on a directed verdict.

The jury verdict included thirty-one interrogatories. As directed by the Court and with the consent of all parties, an evidentiary hearing was conducted in January, 1992, to address one ambiguously answered interrogatory discovered after release of the jury. Magistrate Judge Louis Moore, Jr. conduct-

---

1. This copy of the Order and Reasons reflect the amendments regarding a clerical error and an award of attorneys fees pursuant to 28 U.S.C. § 1927, addressed by the Court in minute entries of November 24, 1993, and November 30, 1993 respectively.

2. These include defendants SJH, LEI, Krown, and the Partnership.

ed the hearing and entered findings and recommendations on May 22, 1992.[3] In August of 1992, after due consideration, these were adopted without change by the Court.[4]

Judgment incorporating the jury's verdict and the Magistrate Judge's findings was entered August 18, 1992.[5] In response to a motion and cross-motion for new trial, or alternatively to alter the judgment, the Court entered an amended judgment on December 3, 1992. The amended judgment reflected the Court's adoption of defendant's position that the Partnership was liable for interest at the judicial rate, rather than the contractual rates specified in the LEI and Krown leases. This, and other adjustments, resulted in considerable reduction of damages payable by the Partnership.

Defendants' timely appealed the amended judgment, and plaintiff cross-appealed. These appeals have been briefed with arguments scheduled to be heard late January, 1994, before the 5th Circuit Court of Appeal. It is for relief from the amended judgment of December 3, 1992, that defendants filed on October 1, 1993.[6]

3. At issue was the ownership of various fixtures, furnishings and equipment (the movables) removed from the office building. The Magistrate Judge found these all to be owned by the Partnership based on reconstruction of cancelled checks and invoices, depreciation deductions entered on the partnership income tax returns, and the fact that given several opportunities to do so, the Liljebergs did not introduce *one* piece of documentary evidence to support their verbal assertions that either they as individuals or LEI owned the movables. See Findings and Recommendations, Document # 272.

4. See Order and Reasons, Document # 279.

5. The Court's partial final judgment of September 25, 1990 recognized Travelers' mortgage on the medical office and directed the property to be sold by the U.S. Marshall in partial satisfaction of the Partnership's debt to Travelers of in excess of $24,000,000. Travelers purchased the property at judicial sale held October 18, 1991.

6. There are three related cases involving these parties over which the Court is presiding or has presided:

1. *Travelers Insurance Company v. Liljeberg Enterprises, Inc.,* C.A. No. 92–58 filed January 6, 1992, by Travelers to compel LEI to pay rental of its lease in the medical office building subsequent to Travelers' acquisition of the building at judicial sale October 18, 1991. The Court granted summary judgment against defendants and entered judgment August 18, 1992. Both parties' motions to amend judgment were denied November 24, 1992. Timely appealed to the Fifth Circuit by defendants and cross-appealed by plaintiff, arguments were heard October 7, 1993, the day after *The Times Picayune* reported filing of defendants' motion for relief in C.A. No. 92–58 and the instant case. Unlike the instant case, no stay of proceedings was issued by the Court in this action, which of the two actions in which defendants presently seek relief was the only bench trial. Defendants filed a motion for disqualification to hear its motion for relief on November 2, 1993.

2. *Travelers Insurance Company v. St. Jude Hospital of Kenner, La., Inc.,* C.A. No. 93–0173. This suit, involving the plea of discussion, was filed by Travelers on January 15, 1993, to compel SJH, the partnership's sole general partner, to pay the partnership's debt previously adjudicated in the instant case. The Court rendered summary judgment against SJH, and judgment was entered July 30, 1993, six days after defendants learned of the "facts" underlying the present motion and approximately a week before defendant therein, St. Jude Hospital of Kenner, La., requested Chapter XI relief in bankruptcy. Despite filing motions for disqualification of Judge Mentz in 92–53 and the instant case on November 2, 1993, no motion for disqualification has been filed in this case. Defendants filed notice of appeal of 93–0173 on October 14, 1993, and a motion for relief from judgment was also filed November 2, to be heard instead December 1, 1993.

3. *Travelers Insurance Company v. St. Jude Medical Office Buildings Limited Partnership, St. Jude Hospital Complex Development Group, Inc. and Liljeberg Enterprises, Inc.,* C.A. No. 93–1199, was filed April 8, 1993, and consolidated with an adversary proceeding withdrawn from the Chapter XI bankruptcy proceedings of Liljeberg Enterprises, Inc., which were commenced January 27, 1993. The Court denied defendants' request to re-transfer the case to its original allotment in another section, and continued the trial originally scheduled for November 1, 1993, to January 24, 1994, due to an on-going five-week-and-counting trial of an unrelated suit. This case is a revocatory action involving allegations that partnership assets were transferred to affiliates for no consideration. Both parties therein have filed motions for summary judgment, which were taken under submission October 15, 1993. No motion for disqualification of Judge Mentz has been filed in this case.

The cumulative experience of the Court in presiding over these cases has caused the Court considerable dismay due to conflicting pleadings as to the ownership of the movables removed from the medical office building, reminiscent of

In the motions before the Court defendants allege they were denied a fair and meaningful opportunity to be heard in this case because the district judge failed to disqualify himself from presiding over a two week trial by jury when he knew or should have known his impartiality in judging the case might be questioned, in violation of 28 U.S.C. § 455(a).[7] The basis for the district judge's impartiality is founded, according to defendants, in his loyalty to alleged "social ties" with current and former partners of a firm representing plaintiff, in preference to the oath he swore to uphold the Constitution of the United States in the execution of his duties as a federal district judge. Such an assertion is abhorrent to the Court.

The Court notes that counsel in this case did not seek to voir dire the jury on club membership, and that at no time during the three years covering the course of this or related actions, was the Court or Magistrate Judge Moore questioned by counsel with respect to membership in any social clubs or organizations.

Defendants' motion to disqualify is denied as without basis in law or fact.[8] The ultimate effort in defendants' litigation strategy, their motion for relief from judgment, is denied as untimely[9] and without basis in law or fact.[10] *Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98 (5th Cir.1975), *cert. den.* 425 U.S. 944 [96 S.Ct. 1685, 48

L.Ed.2d 188] (1976); *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985), *cert. den.* 475 U.S. 1012 [106 S.Ct. 1188, 89 L.Ed.2d 304]; *Matter of Billedeaux*, 972 F.2d 104 (5th Cir.1992).[11]

The Court has reviewed the factual allegations that defendants wish to add by their motions for leave to amend and determined for the same reasons set forth above, that the amendments would be a futile gesture and that leave to file them should be denied. Plaintiff's motion to strike is moot. Costs and expenses of these motions are awarded to plaintiffs.

In view of the foregoing reasons,

**IT IS HEREBY ORDERED THAT**

1. Defendants' motion for evidentiary hearing on their motion for relief from judgement is **DENIED**; the hearings set for Wednesday, November 17, 1993, on this motion and others addressed below are **CANCELLED.**

2. Defendants' motion to disqualify Hon. Henry A. Mentz, Jr. pursuant to 28 U.S.C. § 455(a) from hearing the motion for relief from judgment and other motions related thereto is **DENIED;**

3. Defendants' motion for relief from judgment is **DENIED;**

4. Defendant's motions for leave of court to amend statement of material facts in support of its motion for relief is **DENIED;**

---

"Liljeberg's chicanery" dealt with by Judge Rubin in another case involving John Liljeberg. See *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 870, note 16, [108 S.Ct. 2194, 2207, note 16, 100 L.Ed.2d 855] citing the dissent of Judge Rubin in an unpublished opinion at 78a. In the instant case, this was addressed by the Court's Order and Reasons entered September 29, 1993, in C.A. No. 93–0173.

7. 28 U.S.C. § 455(a) provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

8. The Court cannot authorize depositions where the grounds have no basis in law or fact and defendants did not move for leave to take post-judgment depositions pursuant to F.R.C.P. 27.

9. *U.S. v. York,* 888 F.2d 1050 (5th Cir.1989).

10. Mr. John Phillips was a member of the Board of Directors of the parent company of Travelers at the time of the trial, unbeknownst to the judge. Mr. Phillips is no longer a member of that Board, but his daughter is married to the brother of the judge's daughter's husband.

The judge is not a member of the Rex School of Design and became a member of the Boston Club prior to becoming a federal district judge, as disclosed during the course of the requisite background investigation by the U.S. Attorney General, and as reported annually since 1984 in the *Almanac of the Federal Judiciary.*

11. See also *Sexson v. Servaas,* 830 F.Supp. 475 (S.D.Ind.1993); *Commonwealth of Pennsylvania v. Local Union 542,* 388 F.Supp. 155 (E.D.Pa. 1974); *Henderson v. Department of Public Safety and Corrections,* 901 F.2d 1288 (5th Cir.1990); *Williams v. Balcor Pension Investors,* 1190 [1990] WL 205805 (N.D.Ill. Nov. 28, 1990).

5. Plaintiff's motion to strike certain allegations is **MOOT**;

6. Costs and expenses of these motions, including attorneys' fees, are **AWARDED** to plaintiff.

New Orleans, Louisiana, this 19th day of November, 1993.

**Minute Entry**

**Dec. 20, 1993.**

The Court has reviewed the factual allegations that defendants wish to add by their motion for leave to amend statement of material facts in support of their motion to disqualify and their third motion for leave to amend statement of material facts in support of their motion for relief from judgment, which were scheduled to be heard Wednesday, December 15, 1993. The Court has determined for the reasons set forth in its Minute Entry of November 19, 1993, that the amendment would be a futile gesture.[1]

Accordingly, **IT IS ORDERED** that

1. Defendants' motion for leave to amend statement of material facts in support of their motion to disqualify and defendants' third motion for leave to amend statement of material facts in support of its motion for relief from judgment are **DENIED**, and

2. The hearings set for Wednesday, December 15, 1993, are **CANCELLED**.

---

**1.** The Court wishes to note that on March 31, 1993, a minute entry was issued in *St. Bernard Savings and Loan Association v. Joy Levet, wife of/and George Cella III*, C.A. No. 91–4493, whereby the Court denied the motion to dismiss of third-party defendant Travelers Indemnity Company. Travelers Indemnity Company is one of the same family of insurance companies as Travelers Insurance Company and is represented by the law firm of Jones, Walker, Waechter, Poitevent, Carrere, and Denegre, which has members of the same private club in which the judge is also a member. To the best knowledge of the Court, neither defendants Cellas nor their counsel share membership in the same private club as the judge.

The Court also wishes to note that it's most recent contact with Mr. Harry Rosenberg was on October 8, 1993, over the counter in the reception room of Chambers. The greeting was very brief as the Court was alternating between two hearings it was conducting in the final stages of an unrelated five and a half year class action. At the time, as always in the course of his career as a private attorney or as United States Attorney, Mr. Rosenberg conducted himself in a manner of the highest ethical order.